**Tommy L. PICKETT, #85893,**
**Petitioner,**

v.

**The STATE OF OKLAHOMA et al.,**
**Respondents.**

**No. CIV–75–0334–D.**

United States District Court,
W. D. Oklahoma,
Civil Division.

July 30, 1975.

Tommy L. Pickett, pro se.

Paul Crowe, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

### ORDER

DAUGHERTY, Chief Judge.

This is a proceeding for writ of habeas corpus by the above-named petitioner who is confined in the Oklahoma State Penitentiary at McAlester, Oklahoma. He challenges the validity of the judgments and sentences rendered by the District Court of Oklahoma County, Oklahoma in cases numbered CRF–72–1915, CRF–72–1916, CRF–72–1917 and CRM–72–1449 on the ground that his pleas of guilty in those cases were involuntary. In support of this claim he makes the following affidavit:

"1. That petitioner was interviewed in the Oklahoma County jail prior to his entering pleas of guilty in the above described cases by his counsel of record.

"2. That the said counsel of record represented to the petitioner that if he would waive jury trial in Case No.s CRF–72–1915, through 1917 and

CRM–72–1449, the State's District Attorney would allow the court not to impose sentences over five (5) years concurrent in Case No. CRF–72–1915, No. CRF–72–1916, No. CRF–72–1917.

"3. That said counsel of record represented to the petitioner that he had the authority to speak for the Oklahoma County District Attorney and the Presiding Judge of the District Court in the matter of the amount of sentence that would be imposed in the above mentioned cases.

"4. That the said attorney instructed the petitioner to advise the Judge and prosecutor at the time he go to trial, that he would waive jury trials in Case No. CRF–72–1915, CRF–72–1916, CRF–72–1917 and plead guilty to the offenses charged.

"5. That the said counsel of records represented to the petitioner that an agreement had been reached between the state of Oklahoma and Trial Court as represented by Counsel, and the petitioner in the matter of waiver of jury trials, pleas and sentences of five years in each case to run concurrent.

"6. That at the time of petitioner's trial acting on the promises and representation of his counsel waived jury trial in Case No. CRF–72–1915, 1916, 1917.

"7. That at the time of petitioner's trial acting on the promise and representation of his counsel plead guilty in the aforemention cases with the expectations of receiving sentences of five (5) years in each case to run concurrent.

"8. That at the time petitioner entered his pleas of guilty in said cases he did not receive five (5) years on each case to run concurrent as promised and represented by defense counsel but instead in Case No. CRF–72–1915, the offense of Robbery with firearms, received a sentence of forty (40) years, Case No. CRF–72–1916, the offense of Robbery with firearms received a sentence of forty (40) years; Case No. CRF–72–1917 the offense of Assault with a deadly weapon with intent to Kill, received a sentence of twenty (20) years; and Case No. CRM–72–1449, the offense of Possession of Marijuana, received a sentence of one (1) year in the county jail, all sentences to run consecutively."

It appears from the court's examination of the files and records of the Oklahoma courts submitted by the respondents that the petitioner was charged by Information in the District Court of Oklahoma County as follows:

Case No. CRF–72–1915— Robbery with Firearms
Case No. CRF–72–1916— Robbery with Firearms
Case No. CRF–72–1917— Assault with a deadly weapon with intent to kill
Case No. CRM–72–1449— Possession of marijuana.

On November 20, 1972 the petitioner appeared with his court-appointed attorney before the court and entered pleas of guilty to all four charges. Prior to making the pleas he was advised that the maximum punishment provided for the crimes as charged was death and the minimum was imprisonment for five years. He stated that he knew the penalties and understood that he could be sentenced to any term of imprisonment within these limits. After being specifically advised of his right to a jury trial he waived a jury trial. He told the court that he had discussed the charges with his lawyer, had his advice and that

his pleas were made of his own free will without any compulsion. He further stated to the court that he had not been abused, mistreated or threatened by anyone and that he was pleading guilty only for the reason that he was guilty. The defense then requested a report from the probation department before sentencing. The foregoing is disclosed by a "Summary of Facts" signed by the Judge, the Assistant District Attorney, the Court Reporter and the mother of the defendant who was present. The petitioner signed a further Addendum to the Summary of Facts as follows:

"I, the defendant in this (these) case(s) and my attorney have read the above and foregoing Summary of Facts and it is a full and true statement of the questions asked and my answers to them. I approve this summary and do not desire to change it or add anything to it."

A probation officer made a comprehensive report to the court which contained the recommendation of the district attorney that the court impose consecutive sentences of 99 years on each of the two robbery charges, 20 years on the assault charge and one year on the marijuana charge. On December 26, 1972, N. Martin Stringer, an attorney who had been privately retained in petitioner's behalf, wrote a lengthy letter to the probation officer detailing the personal history and military service of petitioner. Significantly he stated:

"Although the district attorney's office has recommended 99 years in preliminary negotiation for a plea upon a recommendation, they have previously agreed to 35 years, which obviously was withdrawn *when the defendant chose to put himself at the mercy of the Court.* Even 35 years is too much for a first time offender and especially one who has experienced two tours of combat which could more than likely cause him to do the acts complained of." (Emphasis supplied.)

He then summarized:

"In conclusion, it would seem that based upon the defendant's past record, his service to the country, and his obvious psychological problems, that a sentence of not less than 5 nor more than 7 years in the penitentiary would be sufficient time in which to properly rehabilitate this defendant and to provide him with the necessary psychiatric treatment. To subject this defendant to a longer period of time, when taken into conjuncture with pleas and sentences that are handed repetitive criminals, would be to completely undermine any rehabilitation program that might be available to this defendant and certainly have a greater impact on the psychological imbalance from which he is already suffering. Therefore it is our recommendation that he be sentenced to a period of five years on the above charges, with the time to run concurrently."

On January 11, 1973 the cases came on for sentencing with the petitioner present in person and with the Assistant Public Defender and Mr. Stringer. A full transcript of these proceedings was prepared. Mr. Stringer made an extensive statement in mitigation of punishment in which he commented:

"And additionally I think I ought to point out to the Court we submitted it to a presentence report because at the time we could not agree tentatively to a plea of 35 years." (Tr. 6).

At the conclusion of arguments for both sides the court gave the petitioner consecutive sentences of 40 years on each of the robbery charges, 20 years on the assault charge and one year on the marijuana charge.

The petitioner perfected an appeal by Writ of Certiorari to the Oklahoma Court of Criminal Appeals on the sole ground that the sentences imposed on him were excessive. On August 20, 1973 the appeals court affirmed the judgments and sentences of the trial court. *Pickett v. State,* 513 P.2d 879.

Thereafter, the petitioner filed an application for post conviction relief in the sentencing court which was denied without an evidentiary hearing on January 13, 1975. An appeal was then taken by the petitioner to the Oklahoma Court of Criminal Appeals, case No. PC–75–55. On February 12, 1975 the appellate court affirmed the order of denial of post conviction relief. By these proceedings the petitioner has exhausted the remedies available to him in the courts of the State of Oklahoma.

■ The records examined by the court conclusively refute the existence of any plea bargain or the possibility that the petitioner may have been misled into believing that there was one. This is not a case where all the court has before it is a Summary of Facts containing a denial of any promises or coercion at the time the pleas were entered. Additional matters of record point ineluctably to the conclusion that the petitioner is either deliberately perjuring himself by his affidavit in this court or the passage of time, the shadow of prison walls and the enthusiasm of a writ-writer have so confused hopes and reality that the petitioner is no longer capable of recalling the truth. These additional recorded facts are as follows:

1. Sentencing was deferred at petitioner's request and a presentence report from the Department of Corrections asked for.

2. New privately retained counsel entered the case.

3. The statement by counsel in his letter of December 26th that defendant had decided to throw himself on the mercy of the court.

4. The statement by counsel at sentencing that defendant had rejected a plea bargain for 35 years imprisonment.

5. On appeal immediately after the events no contention was made of an unfulfilled plea bargain or that petitioner's pleas were otherwise involuntary.

■ Obviously if there had been a plea bargain this would have been announced to the court immediately after the pleas of guilty and there would have been no occasion for any hearing in mitigation. If the sentences were to be a foregone conclusion then all that intervened between the pleas and the sentences were senseless. No presentence report would have been required. If the petitioner were so confident of the sentences that he was to receive then it would have been unnecessary for him to secure additional counsel. Why would counsel tell the probation officer that the petitioner had decided to throw himself on the mercy of the court if it was not so? As counsel pointed out, the petitioner had turned down the plea bargain for 35 years imprisonment, and no doubt he and his counsel thought they could do better with the court than with the district attorney. Certainly they must have been disappointed at the sentences which the petitioner received. Unfulfilled hopes, however, do not render pleas of guilty involuntary. It is not enough that the petitioner's attorney may have predicted a lesser sentence. *Wellnitz v. Page,* 420 F.2d 935 (CA10 1970); *Holland v. United States,* 406 F. 2d 213 (CA5 1969). The court must exercise its common sense and if a petitioner's allegations are palpably incredible the court, in its discretion may deny a full hearing. *Machibroda v. United States,* 386 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 573 (1961). Ordinarily a petitioner's unsupported testimony that his attorney misrepresented to him an agreement with the prosecutor is insufficient for relief on collateral attack. *Sobota v. Rodriguez,* 371 F.2d 909 (CA10 1967). In *Masciola v. United States,* 469 F.2d 1057, 1059 (CA3 1972) the petitioner's trial counsel had inaccurately "assured him" that he would receive a concurrent sentence. The court held that such a claim did not require an

evidentiary hearing. See also *Moore v. United States,* 334 F.2d 25 (CA5 1964).

The posture in this case is similar to that in *Putnam v. United States,* 337 F. 2d 313, 315 (CA10 1964) where the court in denying relief without an evidentiary hearing stated:

"Putnam alleged in his motion that the guilty plea was induced by a promise that he would be deported rather than imprisoned if he would plead guilty. It is not entirely clear from the record whether this promise is alleged to have been made by his court-appointed attorney, by the prosecutor or some other government official or by the trial judge. In any event, such an allegation of fact must ordinarily be accepted as true, but that is not so where the allegation is contradicted by the files and records before the court. *Pelley v. United States,* 7 Cir., 214 F.2d 597, cert. denied, 348 U.S. 915, 75 S.Ct. 296, 99 L. Ed. 718; *United States v. Davis,* 6 Cir., 319 F.2d 482. We are of the opinion that the files and records in this case not only contradict Putnam's allegation, but also show without question that appellant's plea of guilty was entered voluntarily and knowingly with a full understanding of the nature of the charge and the possible penalty therefor, and was not the result of a promise of any kind."

See also *Webb v. Crouse,* 359 F.2d 394 (CA10 1966).

Since the application and the files and records conclusively show that the prisoner is entitled to no relief the Petition for Writ of Habeas Corpus will be denied.

It is so ordered.