**James GUYTON, Petitioner,**

v.

**Eugene LeFEVRE, Superintendent, Clinton Correctional Facility, Respondent.**

**No. 82 Civ. 65 (CES).**

United States District Court,
S.D. New York.

March 29, 1983.

---

James Guyton pro se.

Robert M. Morganthau, Dist. Atty., New York County by Mark Dwyer, Asst. Dist. Atty., New York City, for respondent.

## MEMORANDUM DECISION

STEWART, District Judge:

Before us is a *pro se*[1] habeas corpus petition brought pursuant to 28 U.S.C. § 2254 (1976). The petitioner is currently serving a sentence of twenty-five years to life following his conviction for felony murder, robbery, and attempted robbery in January 1975. The petitioner argues that he was convicted in contravention of the due process clause of the fourteenth amendment, and sets forth five "points" in support of this claim. Points one and two assert that a witness' in-court identification of the petitioner was rendered unreliable by a previous and impermissibly suggestive pre-indictment photo identification by the same witness. Point three avers that the jury charge at petitioner's trial improperly shifted the burden of proof to the petitioner. Point four contends that a statutory presumption rule improperly shifted the burden of proof to the petitioner. Point five asserts that a deal between a prosecution witness and the prosecution was not disclosed to the petitioner at his trial.

Since the time of his conviction, petitioner has sought to overturn his conviction via three separate motions to vacate (motions *coram nobis*), a direct appeal, and one previous federal habeas corpus petition. The latter was dismissed for failure to exhaust state remedies and need not concern us this request.

---

1. Petitioner has moved for appointment of counsel. For reasons outlined below, we grant

further. However, the procedural history behind petitioner's other attacks on his conviction is relevant to our analysis on this petition and so is briefly recounted.

### The Procedural History

Petitioner's first motion to vacate was made in November 1975, pursuant to N.Y. Crim.Proc.Law § 440.10 (McKinney 1971). In support of his motion, petitioner argued that a suggestive pre-indictment photo identification tainted the identifying witness' subsequent in-court identification of the petitioner. The trial court denied the motion but issued no opinion to indicate whether it had considered the merits of petitioner's claim or denied the motion because the allegations concerned matters which were in the record and, therefore, could be raised on appeal, a separate procedural ground requiring denial of a motion to vacate under section 440.10(2)(b). Because these same identification claims had been decided in a pre-trial *Wade*[2] hearing, the issues presented in the motion to vacate were indeed "in the record," and the prosecutor argued for denial solely on this procedural ground. In a subsequent motion for rehearing, petitioner contended that the procedural bar to a review on the merits should not be invoked where the prosecutor has not attempted to refute the movant's allegations. This motion was also denied.

A year later, petitioner moved for a second time and pursuant to the same statute to vacate his judgment of conviction. He again asserted the unreliability of the photo and therefore the in-court identification, but the nature of his argument was somewhat different. This second motion to vacate was denied, apparently by endorsement and without opinion. There is no indication as to what if anything the prosecutor argued in opposition to this motion.

Apparently, even prior to the time he first moved to vacate, the petitioner initiated a direct appeal of his conviction. On appeal the petitioner had the benefit of counsel—his motions to vacate, including a third one not yet discussed, were all *pro se.* The claims raised on appeal had nothing to

do with the allegedly unreliable identification of the petitioner by the testifying witness, and are also completely distinct from all other claims raised in this petition. The conviction was affirmed without opinion by the Appellate Division and leave to appeal to the New York Court of Appeals was subsequently denied.

In July of 1981, petitioner asked the state trial court to vacate his judgment of conviction for a third time, this time alleging precisely the same five "points" presented in this petition. The motion was again denied and this time the trial court issued a brief opinion setting forth its reasons. That opinion reads in its entirety:

> The defendant has moved pursuant to CPL § 440.10(1)(h) to vacate the judgment against him on the ground that it was obtained in violation of his rights under the constitution of the United States. Specifically, Guyton challenges the constitutionality of the in-court identification of him made by Anna Barrows, the victim's widow. An extensive "Wade" hearing was held prior to trial; and the defendant failed to raise the "Wade" issues on appeal. Thus, this court must deny the motion pursuant to CPL 440.10(2)(c) since no justification for the failure to raise that issue has been demonstrated.
>
> The defendant's other points are without merit.
>
> The motion is denied.

Subsequently, petitioner sought and was denied leave to appeal this decision to the Appellate Division. This petition followed.

### Exhaustion of State Remedies and Procedural Bypass

Before a federal court may consider a habeas corpus petitioner's claims, it must make certain that (1) every one of his claims has been fairly presented to the highest state court possible, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of New York,* 696 F.2d

---

**2.** *U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

186, 190 n. 3 (2d Cir.1982) (en banc), and (2) the petitioner was not barred in state court from having his claims considered on the merits due to his disregard for or "bypass" of state procedural requirements. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Gulliver v. Dalsheim,* 687 F.2d 655, 658 (2d Cir.1982). With regard to the procedural bypass rule, if a state court reaches the merits of a claim even though it could have found the claim defaulted for procedural reasons, a federal habeas court is not barred from passing on the merits of that claim. *See, e.g., Washington v. Harris,* 650 F.2d 447, 452 (2d Cir. 1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982); *Kelly v. Smith,* 425 F.Supp. 184, 185 (E.D.N.Y.1977).[3]

On this petition, respondent concedes petitioner has exhausted his state remedies but argues that his claims are barred from our review under the procedural bypass doctrine. We conclude that some of petitioner's claims are procedurally barred and that some are not. We agree that the claims which are not procedurally barred have been adequately exhausted.

■ On petitioner's first motion to vacate, petitioner asserted claims substantially the same (with one exception discussed below) as those presented under the headings "Point One" and "Point Two" here. As noted, the trial court issued no opinion to indicate whether it denied the motion on the merits or for procedural reasons. However, where the prosecutor has argued procedural grounds for denial, as here, a federal habeas court should presume that the state court based its rejection of the claim on those adequate and independent state procedural grounds. The federal court should, therefore, abstain from habeas review. *Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). *See Johnson v. Harris,* 682 F.2d 49, 51 (2d Cir.1982). Accordingly, we conclude that unless the state courts have reached the merits of the issues raised in points one and two in some

other proceeding, we are procedurally barred from considering them absent a showing of cause and prejudice by the petitioner. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

Petitioner did raise identification claims in his second motion to vacate, and with this motion, unlike the first, there is no evidence to show what the prosecutor argued. Respondent contends that it does not matter what the prosecutor argued or, more to the point, whether the trial court reached the merits of petitioner's claims in denying the motion, since the issues raised in petitioner's second motion to vacate are different from those raised here. We disagree. While the thread of petitioner's argument on his motion to vacate is slightly different from that here, both arguments go to the ultimate question of whether the witness' in-court identification of petitioner was sufficiently reliable. In addition, petitioner's brief in support of the second motion to vacate is framed as though it were asking for reconsideration of the first motion to vacate. The second argument assumes familiarity with the first. Insofar as both motions were made to the same trial judge who also conducted the *Wade* hearing on the same underlying issues, we conclude that the issues raised in the second motion should be considered the same as those raised in the first. Since we have up to now held these issues to be procedurally barred by the denial of the first motion to vacate, it is indeed important to know whether the trial court reached their merits on the second motion to vacate, thus removing the procedural bar.

We see two possible interpretations as to what the trial court intended when it denied petitioner's second motion to vacate. Neither is helpful to petitioner. First, we might conclude that the trial court reached the merits of petitioner's claim. This conclusion is supported by dictum in *Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 109, 74

---

**3.** Also, if a federal habeas court otherwise finds that a claim is procedurally barred, it may still reach the merits upon a showing of cause and prejudice. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

L.Ed.2d 97 (1982). As previously noted, the *Martinez* court held that where the prosecutor has argued the procedural ground for denial before the state court, this is adequate to create a presumption that the state court based its adverse ruling on that procedural ground. However, the *Martinez* court also stated that "if the prosecutor does not raise the procedural point, and if the court gives no indication that it is relying on it, then the federal claim is open for our consideration." *Id.* at 54.

 Even though we have no indication that the prosecutor asserted the procedural ground on the second motion to vacate, and despite the *Martinez* dictum, we think it far more reasonable to conclude that the trial court denied the second motion for procedural reasons than to conclude that it reached the merits. We reach this conclusion for several reasons. First, the procedural setting in which the trial court denied the motion is distinguishable from that contemplated by the *Martinez* dictum. The *Martinez* court made its comment assuming the procedural setting of appellate review, where the deciding court would not normally have heard argument on the same issues in the same case before. When the trial judge denied petitioner's second motion to vacate, he had already heard and considered the prosecutor's procedural argument—the only argument for denial the prosecutor ever chose to make—when faced with a decision on petitioner's first motion to vacate, just one year before. He had also heard and denied petitioner's motion for reargument less than a year prior. The only position taken by petitioner on the reargument motion—a position necessarily rejected by the trial judge when he denied the motion—was that the procedural bar should not apply. Under such circumstanc-

es, we think it strains reason to conclude that the trial judge ignored the clear command of section 440.10 requiring denial on procedural grounds [4] and reached the merits of petitioner's claims. We find the facts of this case to be considerably closer to those of the *Martinez* case itself than to those contemplated by its dictum. The procedural bar to our consideration of the identification claims that petitioner raised in his first motion to vacate is therefore left intact by the state court's disposition of the second.[5]

This result is obviously unchanged by the trial court's decision as to petitioner's third motion to vacate, since the court's opinion expressly denied the motion as to petitioner's previously considered identification claims for procedural reasons.[6] At this point, however, a clarification must be made. We noted that on the third motion the trial court found petitioner's "previously considered identification claims" to be procedurally barred. It could not, and therefore we conclude did not, reject one new claim contained in point two of that motion's and this petition's briefs. On the third motion to vacate, and here, petitioner alleged for the first time that the identifying witness was shown a single mug shot of the petitioner just before she selected his photograph from an array. The gist of this claim is that the identifying witness was tipped off as to what the person the police believed to be the suspect looked like so that she might "guess" right at the photo identification. The trial court could not have rejected this claim on the procedural grounds of section 440.10(2)(c) since this claim was never raised at the *Wade* hearing and therefore could not have appeared "on the record," the predicate for determining that it should have been brought on appeal. *See* N.Y.Crim.Proc. Law § 440.10(2)(c)

---

4. Section 440.10(2)(b) states:

2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

. . . .

(b) The judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal[.]

5. A small consolation for petitioner is that had we not found these claims procedurally barred, an exhaustion problem would still have existed.

6. The third motion to vacate was ruled on by a different state court judge from the judge that presided at petitioner's trial and ruled on the earlier motions to vacate.

(McKinney 1971). Perhaps the trial court could have found this claim procedurally barred under section 440.10(3)(a), but the plain fact is that it did not.

■ We must assume, then, that this one identification claim falls into the category of those claims which the trial court found to be "without merit." Although respondent makes an argument to the contrary, these claims (which we take to be those subsumed under points three through five, and the one identification claim just mentioned) were clearly reached on the merits as the court's very language makes apparent.

■ We also conclude that they were fully exhausted. "Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." *Daye v. Attorney General of New York,* 696 F.2d 186, 190 n. 3 (2d Cir.1982) (en banc). After his third motion was denied, petitioner sought and was denied leave to appeal to the Appellate Division. There is a split of authority on the issue of whether leave to appeal to the

Court of Appeals is possible after leave to appeal to the Appellate Division has been denied, *see Furman v. Dalsheim,* 487 F.Supp. 1213, 1216 n. 2 (S.D.N.Y.1980) (N.Y. Crim.Proc. Law § 460.20 (McKinney 1971) permits appeal to Court of Appeals following denial of leave to appeal by Appellate Division); *People v. Williams,* 342 N.Y.S.2d 75 (App.Div.1973) (no appeal lies from an order denying leave to appeal to the Appellate Division); *People v. Brock,* 332 N.Y. S.2d 110 (App.Div.1972) (there is no provision for the review by the Court of Appeals of the refusal to grant leave to appeal by the Appellate Division), however, we conclude that New York law does not permit an appeal from a denial of leave to appeal.[7] This being so, petitioner has brought his claims to the highest state court possible, *see Daye v. Attorney General of New York, supra,* and we may consider the merits of those which are not procedurally barred.

### *The Identification Claim*

Petitioner's only surviving claim concerning the unreliability of the witness' identifi-

7. While section 460.20 N.Y.Crim.Proc. Law (McKinney 1971 & Supp. 1982–1983) states that certification of an appeal to the Court of Appeals may occur when "an order of an intermediate appellate court ... involves a question of law which [in the view of the certifying judge] ought to be reviewed by the court of appeals," certification is but a prerequisite to satisfying section 450.90 N.Y.Crim.Proc. Law (McKinney 1971 & Supp. 1982–1983) which governs when an appeal to the Court of Appeals is otherwise "authorized." This latter section provides in relevant part:

> Appeal to court of appeals from order of intermediate appellate court; in what cases authorized
>
> 1. Provided that a certificate granting leave to appeal is issued pursuant to section 460.-20, an appeal may, except as provided in subdivision two, be taken to the court of appeals by either the defendant or the people from any adverse or partially adverse order of an intermediate appellate court entered upon an appeal taken to such intermediate appellate court pursuant to section 450.10, 450.15, or 450.20. An order of an intermediate appellate court is adverse to the party who was the appellant in such court when it affirms the judgment, sentence or order appealed from, and is adverse to the party who was the respondent in such court when it reverses the judgment, sentence or order appealed from. An appellant court order which

modifies a judgment or order appealed from is partially adverse to each party.

Under the express terms of the statute, to conclude that a person may appeal to the Court of Appeals the denial of leave to appeal to the Appellate Division requires the additional conclusion that a denial of leave to appeal to the Appellate Division "affirms the .... order [in this case a denial of a motion to vacate] appealed from." However, a denial of leave to appeal does not "affirm" that from which an appeal is sought. An affirmance necessarily entails a review on the merits. *See Black's Law Dictionary* (1968 ed.) (Affirmance: The confirmation and ratification by an appellate court of a judgment, order, or decree of a lower court brought *before it for review* (emphasis added). A denial of certification or leave to appeal actually cuts off the possibility of such a review. This is made clear by section 460.15 N.Y.Crim.Proc. Law (McKinney 1971) which defines certification of an appeal to an intermediate appellate court as a decision as to whether the case "ought to be reviewed." Indeed, if a decision on granting certification were the same thing as a decision on the merits, there would be no need for certification. Since a denial of leave to appeal is not an affirmance of the decision below, it is not an appealable order under section 450.90. *Accord Arroyo v. Jones,* 685 F.2d 35, 38 (1982).

cation of him is that the witness was shown a picture of petitioner just prior to her picking him out of a photo array. Petitioner has not, however, alleged any facts nor does he point to any showing made before the trial court on his third motion to vacate which would show this to be true. On the other hand, although we have concluded that the trial court must have rejected this claim on the merits, since it would have been improper to have found the claim procedurally barred under section 440.10(2)(c), respondent has provided no transcript to show that an evidentiary hearing took place on this point. In short, we have no basis on which to evaluate petitioner's claim or determine whether state court review of that claim was adequate. However, since unsubstantiated claims are easily fabricated, we exercise our discretion over such matters to postpone a decision as to whether an evidentiary hearing is necessary on this claim. Instead, we order petitioner to submit an affidavit within thirty days setting forth his reasons for believing that the witness was shown a mug shot prior to her photo identification of him. *See Copenhaver v. Bennett,* 355 F.2d 417, 421–22 (8th Cir.1966). If petitioner fails to submit an affidavit, his identification claim will be deemed waived for purposes of this petition. The affidavit must provide some reason for concluding that his claim has not been made up. *Cf. Pickett v. Oklahoma,* 404 F.Supp. 1157, 1160 (W.D.Okl.1975) (hearing may be denied if allegations are incredible). Respondent should submit any further materials that may exist evidencing the trial court's consideration of this claim.

### Petitioner's Sandstrom Claim

The claim alleged under point three is that the trial court's instructions to the jury on intent created a mandatory, burden-shifting presumption.[8] This claim presents thorny issues requiring the application of legal principles which have been developing very rapidly as of late. In *Sandstrom v.*

*Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that jury instructions which a jury could construe as either creating an "irrebuttable direction," *id.* at 517, 99 S.Ct. at 2455, or a mandatory, burden-shifting presumption as to the issue of intent are violative of due process where intent is an element of the offense charged. The offending instruction was, "The law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 515, 99 S.Ct. at 2454. Scanning the charge in petitioner's trial we find that the jury charge does run afoul of the *Sandstrom* due process standard. Three separate instructions on intent are implicated. The first instruction on intent given by the trial court was:

Now during the course of this charge, I will mention the word intent quite often. And whenever I do, remember what I am now going to explain to you about it. This will cut down some of the repetition. In analyzing the charges, you will have to determine a defendant's intent, if any. That is, the intent with which he did a particular act, if, indeed, you find that he did commit that act.

Intent is a mental operation. Therefore, you cannot see it. It is a subjective element, and normally it might be difficult to prove what was in a person's mind at a particular time in the past when it is charged that a crime was committed. Now, as a rule, intention may be proved by the facts and circumstances surrounding the person's acts, and, by any oral declarations made by him at the time or immediately preceding or following it; and by an examination of all the events leading up to and following the commission of those acts.

Our law permits you to infer that *every person is presumed to intend that which is the natural, the normal, or the inevitable consequences of his own voluntary acts, if in fact, he did anything.*

**8.** It is not clear whether petitioner means to also assert under point three that the trial judge exercised "poor judgment" in his use of a hypothetical in the charge. If so, we reject this claim since, even were we to conclude that it raises a federal claim, the trial judge's supplemental charge, Tr. 1302, eliminated any possibility that the hypothetical could be misunderstood by the jury.

So that you the jury have the right to find from the result of a defendant's acts his intention to bring about that result. Tr. 1264–65 (emphasis added).

The court continued by providing a "simple example" of how the jury would have the "right to infer" intent to harm from the act of striking someone in the head with a hammer. Tr. 1265–66.

This part of the charge is arguably capable of an interpretation which violates *Sandstrom*. The impermissible interpretation of the charge would see the second paragraph as stating that intent is difficult to prove, the third paragraph as saying that intent is generally proved by surrounding facts, and the fourth and fifth paragraphs as providing a kind of "however" clause, that because intent is difficult to prove and the law allows it, the jury may if it wishes simply presume intent from acts, regardless of whether it would be reasonable to do so. This construction, although not creating a *mandatory* presumption, would violate *Sandstrom* by permitting the jury to conclude "that the presumption was a means by which proof . . . as to intent *could* be satisfied." *Sandstrom v. Montana,* 442 U.S. 510, 519 n. 7, 99 S.Ct. 2450, 2456 n. 7, 61 L.Ed.2d 39 (1979) (emphasis added). Allowing the jury to apply a factually unsupported presumption is quite different from allowing it to draw an inference if it appears reasonable under the facts of the case to do so. *See, e.g., Connecticut v. Johnson,* —— U.S. ——, —— n. 4, 103 S.Ct. 969, 982 n. 4, 74 L.Ed.2d 823 (1983) (Powell, J., dissenting) (a jury instruction which "allowed the jury to conclude that the defendant

possessed the requisite intent on the basis of facts that would establish only criminal negligence" would be impermissible).[9] However, this offending interpretation hinges on the words "[o]ur law permits you to infer that every person is presumed . . .", which, since they make little literal sense, were quite possibly not understood as creating a burden-shifting presumption. In addition, any burden-shifting implication these words may actually have had probably was undercut by the illustration which the trial judge provided.

The second and third instructions are more problematic. The second time the trial court instructed on intent was with direct reference to the felonies—robbery and attempted robbery—upon which petitioner's felony murder conviction rested. The court instructed:

One of the essential elements in all of the crimes is intent. I told you something about intent[.] Intent is the frame of mind of the perpetrator of an act at the time he commits it. *You determine a man's intent by his acts,* his conduct, by what he does, by what he says. As I have indicated, it is a mental operation which is proved by the facts and circumstances surrounding—that is, leading up to, during and immediately following the act. Intent is the silent secret operation of a man's mind and its only visible manifestation is the accomplishment or the attempted accomplishment of the things that he intended to do or that was decided upon. An individual whose intent is sought to be ascertained may remain si-

---

**9.** Conspicuously absent from the entire charge is an "unless clause," *see Rivera v. Coombe,* 683 F.2d 697, 701 (2d Cir.1982); *Mancuso v. Harris,* 677 F.2d 206, 210–11 (2d Cir.1982), which would put the jury on notice not to assume the existence of intent if the facts made such an assumption unreasonable. In *Rivera* the ameliorative "unless clause" qualified the presumption instruction by advising the jury they might presume intent from acts "unless such acts were done under circumstances which would preclude the existence of intent." 683 F.2d at 701. This instruction let the jury know that they should not "fail[ ] to consider whether there was any evidence tending to cast doubt on this element of the crime." *Connecti-*

*cut v. Johnson,* —— U.S. ——, ——, 103 S.Ct. 969, 976, 74 L.Ed.2d 823 (1983) (plurality opinion).

The cases in this area frequently speak in terms only of "mandatory" presumptions being impermissible. Yet the facts of these cases and common sense dictate that jury instructions which allow the jury to think it *may* find intent in the face of facts which raise a reasonable doubt as to its presence are just as violative of due process. *Sandstrom* itself stands for the proposition that the mere *possibility* that the jury did not fully and fairly consider the evidence creates a due process error. *See Sandstrom,* 442 U.S. at 519, 526, 99 S.Ct. at 2456, 2460.

lent, and if he speaks during the course of its operation or leading up to it, and having a crime concealed may speak untruthfully. *And again* a person [sic], *the law is that a person intends to accomplish the necessary and probable consequences of his acts.*

You have a right to find from the result which came about an intent to achieve that result. Tr. 1272–73 (emphasis added).

This instruction is clearly amenable to an impermissible construction. The statement, "You determine a man's intent by his acts ..." is, under this construction, given meaning by the language "the law is that a person intends to accomplish the necessary and probable consequences of his acts." The latter language creates a mandatory, "irrebuttable direction," *see Sandstrom v. Montana*, 442 U.S. 510, 517, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979), which is certainly impermissible. The final sentence in this instruction on intent, "You have a right to find from the result which came about an intent to achieve that result," does not alleviate the problem. *See Ramirez v. Jones*, 683 F.2d 712, 715 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983) (language in charge "jury has the right to infer from the results produced, the intention to effect such result" following presumption language did not prevent shifting of burden of proof). This sentence may be construed as merely confirming what has just been said, that is, that the jury has a perfect "right" not to worry about finding intent since "the law is that a person intends to accomplish the necessary and probable consequences of his acts."

The third instruction on intent although given during an instruction on common law murder—a charge the jury never reached— did attempt to characterize what had previously been said on intent, and in so doing, used burden-shifting language:

The penal law defines intentionally this way. A person acts intentionally with respect to a result when his conscious objective is to cause such result or to engage in such conduct. Now I have explained intent to you, at least twice, so I am not going to burden you with it again. In addition to what I have told you on the subject of intent[,] *a man is presumed to intend the ordinary consequences of his act and so on,* in addition in a case where wounds are inflicted in a vital part of a victim's body ... Tr. 1287 (emphasis added).

The court went on to instruct on inferring intent to kill from the infliction of serious wounds, a charge irrelevant to petitioner's felony murder conviction.[10]

Examining these instructions in light of the whole charge as we are bound to do, *see, e.g., Nelson v. Scully*, 672 F.2d 266, 268, 272 (2d Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982), does not convince us that "there was simply no possibility that ... '[t]he jury could have interpreted the ... instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.'" *Id.* at 272 (citing *Sandstrom*, 442 U.S. at 518–19 n. 7, 99 S.Ct. at 2456 n. 7). Notwithstanding the court's instructions on the state's burden of proving each element beyond a reasonable doubt,[11] it appears that the jury might have interpreted the charge in either of two burden-shifting ways. First, the jury could have thought that they were obliged to presume intent from acts. This is possible

---

**10.** With regard to inferring intent to kill, the court stated, "Now you are not bound to infere [sic] an intent to kill from the infliction of serious physical injury in a vital part of a victim's body but you may draw such a conclusion." Tr. 1288. This language arguably mitigates the *Sandstrom* error, but since, by its own terms, it relates only to inferring intent to kill—an issue not involved in petitioner's conviction—we think it entirely possible that the jury would take it as restricting the use of the presumption in finding that type of intent only.

**11.** Instructions that the state must prove each element beyond a reasonable doubt are relevant to evaluating whether the charge is erroneous when viewed as a whole, though such instructions are not in any way dispositive. *See Ramirez v. Jones*, 683 F.2d 712, 716 (1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). *See also Sandstrom v. Montana*, 442 U.S. 510, 518–19 n. 7, 99 S.Ct. 2450, 2456 n. 7, 61 L.Ed.2d 39 (1979).

if the jury focused on the words "the law is that a person intends ..." Tr. 1273, or "a man is presumed to intend ..." Tr. 1287. Second, the jurors might have thought they had the option of presuming intent (as opposed to drawing a reasonable and factually supported inference).[12] We think in the context of the whole charge that the second possibility is more likely, but either is impermissible since each created at least the possibility that "this charge shifted the burden of proof as to the intent issue to [petitioner]." *Ramirez v. Jones,* 683 F.2d 712, 715 (1982), *cert. denied,* — U.S. —, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). In short, there appears to be a due process error in the trial court's instructions.

This finding does not, however, entitle petitioner to relief. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) the Supreme Court held that a constitutional error does not warrant the disturbing of a criminal conviction if it is clear beyond a reasonable doubt that the error was harmless. *Id.* at 24, 87 S.Ct. at 828. Last month, after having granted certiorari to resolve a conflict in lower court opinions, the Supreme Court itself divided on the issue of when *Sandstrom* errors may be deemed harmless, but nevertheless held that at least under some circumstances they may be deemed harmless. *Connecticut v. Johnson,* — U.S. —, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). Four Justices joined in a plurality opinion announcing the judgment of the Court, and four joined a dissenting opinion. Justice Stevens concurred in the judgment but did not reach the merits. The plurality opinion announcing the judgment of the Court took a restrictive view of when harmlessness can be found, and held that a finding of harmlessness is permissible only in "rare situations" such as when "by raising a particular defense or by his actions, a defendant himself has taken the issue of intent away from the jury."

*Id.* at —— – ——, 103 S.Ct. at 977. The plurality opinion expressly rejected the validity of finding harmlessness merely because "the reviewing court may view the evidence of intent as overwhelming." *Id.* at ——, 103 S.Ct. at 977. On this latter point the dissenting opinion disagreed and concluded that harmlessness may be found if "the facts and circumstances so conclusively establish [intent] that the instruction is wholly superfluous." *Id.* at ——, 103 S.Ct. at 981 (Powell, J., dissenting).

■ While neither opinion represents "a binding holding of the Court," *see id.* at ——, 103 S.Ct. 979, at 4179 (Powell, J., dissenting), we conclude that a finding of harmlessness is strongly supported by the rationale of the dissenting opinion, and is at least consistent with the spirit of the plurality opinion. Accordingly, we hold that the *Sandstrom* error at petitioner's trial does not justify granting a writ of habeas corpus.

We reach this conclusion because intent was not a serious issue at petitioner's trial. The main thread of petitioner's defense was misidentification. Petitioner's counsel put it in his opening, "Now we have made no secret of the fact that the crucial question in this case is one of identification. Can't dispute the murder, it's a question really of whodunit." Tr. 27. The trial judge similarly summarized petitioner's defense in his charge by stating, "In effect [petitioner] says that he did not rob or kill Mr. Barrows. It must have been someone else." Tr. 1283. Insofar as petitioner's defense did not, in fact, "dispute the murder" and in many ways admitted it was "someone else," it can fairly be said that "the defendant conceded the issue of intent," one of the *Johnson* plurality opinion's criteria for finding harmlessness. *See Connecticut v. Johnson,* — U.S. ——, ——, 103 S.Ct. 969, 978, 74 L.Ed.2d 823 (1983).[13]

---

**12.** *See* note 9, *supra,* and accompanying text.

**13.** The *Johnson* plurality opinion recognized "alibi" to be one of the defenses in which the issue of intent may be admitted. *Connecticut v. Johnson,* — U.S. at ——, 103 S.Ct. at 978. Since it is unlikely that a defendant would ever literally admit that intent was established during an alibi defense, we assume the plurality allows for "effective" concessions on the issue of intent. *See Washington v. Harris,* 650 F.2d 447, 453–54 (2d Cir.1982), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982) cited with approval by the *Johnson* plurality opinion. — U.S. at ——, 103 S.Ct. at 978. Misidentification is, in essence, the same as the defense of

The only problem with this analysis is that while the "main thread" of petitioner's defense was misidentification, a separate strand of his defense posited that the decedent was not killed pursuant to a robbery. Thus, while petitioner's counsel principally seemed bent on characterizing Mrs. Barrows, the wife of the murder victim, as too emotionally affected to make a credible identification of the petitioner, *see, e.g.,* Tr. 1164–74, he also developed an alternative "theory" as to how the victim was killed which characterized Mrs. Barrows as untruthful. *See* Tr. 1144, 1148–53, 1191. The prosecution's theory was that the victim and his wife were vacationing out-of-towners who were first lured to an apartment to buy a small amount of cocaine and then robbed, during which time Mr. Barrows was killed. Petitioner's alternative "theory" was that the murder victim "had been buying junk in apartment eight for a number of months" and was killed after getting "into a fight with one of the junkies up. there." Tr. 1149. To this end, the defense argued that Mrs. Barrows had lied, rather than simply misidentified the petitioner. *See, e.g.,* Tr. 1155–64.

Insofar as petitioner's alternate theory disputes the robbery underlying petitioner's felony murder conviction, an argument can be made that intent to commit robbery (the only type of intent implicated in petitioner's conviction), was in issue at the trial and that, therefore, the effect of the erroneous *Sandstrom* violation cannot be termed harmless. We reject this argument because while we recognize that this strand of petitioner's defense did put the occurrence of the robbery in issue, we do not think it put intent in issue.

Assuming that the jury arrived at its conclusion that the petitioner was guilty of the robbery and attempted robbery counts underlying his felony murder conviction by applying the *Sandstrom* violating presumption, they would have done the following. First, they would have determined petitioner was at the scene of the crime and committed acts the natural consequence of

which was to bring about the result of robbery. Then, solely on the basis of having found that petitioner committed those acts, they would have presumed he intended to produce the acts' natural result, robbery. Since we can see no other plausible explanation as to what petitioner could have intended by the acts the jury must have found to have occurred but that he intended to rob Mr. and Mrs. Barrows, we are persuaded the *Sandstrom* violation could have had no effect on petitioner's conviction.

The evidence that Barrows was killed during a robbery derived almost exclusively from the testimony of Mrs. Barrows. Her testimony revealed, *inter alia,* that petitioner committed the following "acts" the night of the killing:

Petitioner led the Barrows to an apartment after Mr. Barrows said he was interested in getting some cocaine. Tr. 116.

Inside the hallway of the apartment building, Barrows stated, "Man, there is no stuff here, give me my money and let's get out of here," petitioner "pulled a gun and told [the Barrows] to get in the fucking room." Tr. 120–21.

Petitioner accompanied the Barrows into a kitchen where a companion of petitioner drew a knife. Tr. 121.

In response to Mrs. Barrows' screaming, petitioner said, "Shut that fucking bitch up or I'll kill her," and attempted to hit Mrs. Barrows. *Id.*

Petitioner ordered Mr. Barrows to look in Mrs. Barrows' bra to see if there was money there. Tr. 122.

Petitioner stated he wanted Mrs. Barrows' jewelry and took one ring. Tr. 122–23.

Petitioner repeatedly threatened to kill Mr. Barrows. Tr. 123.

Petitioner agreed with his companion that the companion would accompany Mrs. Barrows to her car to get more money. Tr. 122–24.

It is clear that once the jury found that petitioner committed these acts, which they must have done even to be able to apply the

alibi in that it does not contest the occurrence of the crime, but argues the defendant was

"elsewhere." *See Black's Law Dictionary* (rev. 4th ed.).

presumption, intent to rob was inescapably established.[14] In short, as the *Johnson* dissenting opinion put it, if the "facts [upon which the presumption is based] are themselves dispositive of intent, the presumption becomes unnecessary to the jury's task of finding intent." *Connecticut v. Johnson,* —— U.S. ——, ——, 103 S.Ct. 969, 983, 74 L.Ed.2d 823 (1983) (Powell, J., dissenting). Moreover, since petitioner's counsel neither in cross-examination nor in arguing to the jury suggested that the acts in question were capable of evidencing anything other than intent to rob, we think it fair to say that petitioner had "effectively conceded" that intent would exist in the event that the jury found, as it did, that these acts occurred. *See Washington v. Harris,* 650 F.2d 447, 453–54 (2d Cir,1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982). In this sense we find our resolution of the case consistent with the concerns of the plurality opinion in *Johnson. See Connecticut v. Johnson,* —— U.S. at ——, 103 S.Ct. at 978. *Compare Arroyo v. Jones,* 685 F.2d 35, 40 (2d Cir.1982) (petition granted where intent was an important issue); *Ramirez v. Jones,* 683 F.2d 712, 716 (2d Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983) (petition granted where "intent was *the* crucial issue"). In sum, we find the *Sandstrom* error at petitioner's trial to have been harmless.

### Petitioner's Other Claims

■ Petitioner's fourth point may be dealt with more summarily. Petitioner contends that a gun found in a car in which he was riding several days after the murder was introduced against him pursuant to a mandatory presumption which improperly shifted the burden of proof. While it is true . that N.Y.Penal Law § 265.15(3) (McKinney 1980) permits a presumption that persons in a car possess firearms found there,[15] no instruction as to this presumption was ever given to the jury. The gun was admitted, in the court's words, "for whatever weight you [the jury] deem fit to give it as a weapon that looks like the weapon that was used." Tr. 922.[16] Accordingly, we find no shifting of the burden of ·proof, let alone an impermissible shifting, in connection with the gun.

Petitioner's fifth point is that the prosecution failed to provide him with exculpatory evidence that one of the prosecution's witnesses ("King" McKoy) had testified in exchange for having charges against him adjourned in contemplation of dismissal. The respondent correctly points out that petitioner has cited nothing in the record or otherwise to show that such a deal was struck, but this is not completely surprising since it is the nonrelease of information which lies at the heart of petitioner's claim. Since the respondent has submitted nothing to show that such a deal was not struck, it may be that a hearing is in order to determine whether (1) there was a deal and (2), the prosecution failed to inform petitioner of. it at trial. However, before deciding whether a hearing is appropriate, we again require that petitioner submit an affidavit within thirty days setting forth his reasons for believing that a deal was or might have been made between the prosecution and King McKoy.[17] Respondent may submit any proof it may have during the same time period to show that McKoy's testimony was not the product of a deal.[18]

---

**14.** It is possible to argue that the jury might have found that only some of these acts were established and that the acts actually proved would not be dispositive on the issue of intent. However, our review of the record indicates there is no basis for this argument and we reject it.

**15.** The statute has been upheld in an "as applied" context. *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

**16.** The court stated when the gun was admitted that further instruction as to its evidentiary value would be given in the charge, Tr. 922, however, no additional instruction was ever made.

**17.** The conversation at the sidebar was not, as respondent demonstrates, evidence of a coverup of a deal with McKoy. *See* Tr. 441–44.

**18.** Respondent has argued that petitioner's allegation of a deal is not believable. However, respondent has submitted no proof to show that the allegation is not true. Such proof, if available, would obviate the need for a hearing.

Although our instructions to petitioner at this stage are not complicated, the opinion overall is complex. To assist petitioner in responding to the court's instructions, we grant petitioner's motion for appointment of counsel.

### Conclusion

In sum, petitioner must submit an affidavit within thirty days setting forth his reasons for believing that the one surviving identification claim and his contentions under point five of his memorandum of law are true. The motion for appointment of counsel is granted. The court appoints James Moriarty, Esq., 299 Broadway, Suite 605, New York, New York 10007, as counsel in this case.

SO ORDERED.