**UNITED STATES of America ex rel. Richard W. MATTOX, Petitioner-Appellant,**

v.

**Herbert SCOTT, Warden, Illinois State Penitentiary, Joliet Branch, Respondent-Appellee.**

No. 74–1391.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1974.

Decided Dec. 12, 1974.

Rehearing Denied Jan. 2, 1975.

---

James T. Otis, Clarence O. Redman, Larry S. Goldberg, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Robert Davy, Asst. Atty. Gen., Bernard Carey, State's Atty., Chicago, Ill., for respondent-appellee.

Before MARIS, Senior Circuit Judge,* and CUMMINGS and PELL, Circuit Judges.

PER CURIAM.

In a bench trial, this habeas corpus petitioner was convicted of the murder of Harvey Weinstein and received a 20–30 year sentence, which was affirmed on appeal. People v. Mattox, 96 Ill.App.2d 148, 237 N.E.2d 845 (1st Dist. 1968). Leave to appeal to the Supreme Court of Illinois was denied on January 27, 1969. Petitioner's post-conviction petition under the Illinois Post-Conviction Hearing Act[1] was dismissed, and the order of dismissal was affirmed. People v. Mattox, 8 Ill.App.3d 768, 291 N.E.2d 253 (1st Dist. 1972).

The present petition for writ of habeas corpus was filed on May 31, 1973. On June 4th, the district court granted respondent 20 days to answer or otherwise plead. After two additional extensions were granted, on August 16th petitioner filed a motion to set a hearing date. Nevertheless, two more extensions of time were granted before respondent filed a motion to dismiss or for summary judgment on September 18th.

On November 30, 1973, the district court rendered an opinion granting respondent's motion to dismiss for failure to state a claim, except as to whether petitioner's Sixth Amendment right to counsel during custodial police interrogation (made applicable to the states by the Fourteenth Amendment)[2] was violated under the rule of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and whether any such viola-

---

* Senior Circuit Judge Albert B. Maris of the Third Circuit is sitting by designation.

1. Ill.Rev.Stat. ch. 38, § 122–1 et seq. (1973).

2. See Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799.

tion was harmless.[3]  366 F.Supp. 1294, 1299.

On March 11, 1974, in another opinion, the district court granted respondent's motion for "summary judgment"[4] with respect to the remaining issues, holding that petitioner's right to counsel under Escobedo v. Illinois was not violated and that he gave his incriminating statement to the Assistant State's Attorney voluntarily, so that "the trial judge did not commit a constitutional error when he admitted the statement into evidence" at the murder trial.  372 F.Supp. 304, 311.

### Necessity for Evidentiary Hearing

According to petitioner's February 1971 and October 1973 affidavits and verified petition for habeas corpus, during his interrogation about the Weinstein murder, he was told by police not to sign anything until he talked to a lawyer but was not advised of his right to remain silent.  On October 2, 1963, during the course of his interrogation and after the police had permitted petitioner several unsuccessful attempts to contact his lawyer, petitioner made inculpatory statements to an Assistant State's Attorney which were transcribed and admitted at his trial as Exhibit 24. Petitioner followed the advice that he was allegedly given and refused to sign the transcription.

In August 1964, petitioner, against the advice of counsel, testified during a hearing on a motion for a new trial by Mrs. Weinstein, who had been convicted of her husband's murder prior to Mattox's conviction.  During this hearing, petitioner reiterated that he had received advice from the police not to sign anything until he talked to his lawyer. However, on this occasion, he testified that Lieut. Cartan of the Chicago Police Department had also told him when he was under arrest at the Bedford Park Sheriff's Police Station not to say anything.  The colloquy reads as follows:

> "Q  After you were advised of your legal rights by Lt. Cartan at the Sheriff's Station, did you tell him what happened the night of September 30th?
>
> A  He told me not to say anything, so I didn't say anything.
>
> Q  He told you not to say anything and you said nothing, in the Sheriff's Station, is that correct?
>
> A  I said nothing from then on."

Petitioner's testimony at this hearing referred to his criminal record and became Exhibit 25 admitted at his trial.

■ Respondent filed no affidavits to support his position that during the October 1963 interrogation, petitioner had been advised of his right to remain silent.  In deciding the Escobedo issue against petitioner, the district court relied solely on the petitioner's testimony at the hearing on Mrs. Weinstein's new-trial motion as proof that he had been so advised.  Under the circumstances presented here, we hold that this isolated transcript excerpt is insufficient evidence upon which to justify the denial of an evidentiary hearing.  The statement is fairly subject to a number of interpretations other than that it constituted full advisement to petitioner of the right to remain silent.  Petitioner's verified petition and affidavits state he was not advised of that right.  We think, therefore, that an evidentiary hearing should be held to determine if petitioner was properly advised of his Escobedo rights.

---

**3.** The standards of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, rather than the specific procedural requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are applicable to this case because the trial began on August 16, 1965, which is before the decision in Miranda and after the decision in Escobedo.  See Johnson v. New Jersey, 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882.

**4.** Because we reverse the lower court's judgment and remand for a hearing on the merits of the petition, it is not necessary for us to consider the applicability of Fed.R.Civ.P. 56 on summary judgment to habeas corpus proceedings.  Accordingly, we do not reach that issue.  See 7 Moore's Federal Practice, 2d ed., ¶ 81.05[4] at 81.65–81.70.

■ We may assume, for the purposes of this opinion and without deciding, that either petitioner's testimony at the hearing on Mrs. Weinstein's motion for a new trial correctly recounted the advice that he received at the Sheriff's police station or that he is bound by said testimony in any event. Even so assuming, we are compelled to conclude that an evidentiary hearing is necessary to determine if petitioner was properly informed of his *Escobedo* rights. The evidence that petitioner was so informed is his own statement that a Chicago police officer "told me not to say anything." This is not conclusive evidence that petitioner was informed of his right to remain silent. Being "told" not to say anything at one point in a long period of interrogation is not synonymous with being advised of one's right to remain silent. There is little in the statement that "[h]e told me not to say anything" which would justify the conclusion that petitioner was fully informed of his *Escobedo* rights, that he understood those rights, and that his subsequent statements constituted a waiver thereof. Respondent did not choose to elaborate on what petitioner was told when respondent had the opportunity to do so by affidavit in the court below.

Without an evidentiary hearing, the district court could not properly evaluate the admission that it considered dispositive. Nothing in the crucial phrase could inform the court if petitioner was told not to say anything just while he was at the Sheriff's police station or if he was told that he had a continuing right to remain silent which he could exercise even after he had been transferred to Chicago Police Headquarters and an Assistant State's Attorney had begun to question him before a court reporter.

The text of said questioning, which became Exhibit 24 at petitioner's trial, shows that petitioner was not informed of his *Escobedo* rights at this time. Petitioner's testimony at Mrs. Weinstein's hearing that he never made the statement which became Exhibit 24 was not credited by the district court (372 F.Supp. at 308), so that one cannot infer therefrom that petitioner understood and exercised his right to remain silent.[5] Under the circumstances, we hold that the transcript quotation upon which the district court relied was insufficient evidence that petitioner had been informed of his *Escobedo* rights and that an evidentiary hearing into this question is required. Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770.

■ In addition to the Sixth Amendment *Escobedo* point, petitioner's brief claims that he was entitled to an evidentiary hearing to determine whether he voluntarily made the October 1963 statements admitted as Exhibit 24 at his trial. Respondent argues that this issue is not properly before this Court because it was not raised in the district court.[6] We reject this argument. The petition for habeas corpus claims that the statements were obtained "by police deceit and fraud" in violation of the Fifth and Fourteenth Amendments, and the district court's second opinion in this case specifically considered the merits of the voluntariness issue. 372 F.Supp. at 308–311. The court below apparently thought that this issue was only indirectly raised by the petition. 372 F.Supp. at 308. In light of the language alleging deceit and fraud in the procuring of the statement and invoking the Fifth and Fourteenth Amendments, we conclude that the petition directly raised the issue of voluntariness.

---

5. Petitioner maintained at that hearing that the inculpatory statements were fabricated by the investigating officers and that he was told to state them.

6. The state also argued orally that the voluntariness issue was not properly before even the district court because petitioner had not exhausted his Illinois Post-Conviction Act remedies regarding this issue. In light of Ill.

Rev.Stat. ch. 38, § 122–3 (1973), which provides that any claim not raised in the original or amended complaints under the Illinois Post-Conviction Act is waived, and this Court's recent opinion in United States ex rel. Williams v. Brantley, 502 F.2d 1383 (7th Cir. 1974), we see no merit in the state's contention. See also United States ex rel. Adams v. Bensinger, 507 F.2d 390 (7th Cir. 1974).

Except in one particular, we agree with the district court that petitioner's statements to the Assistant State's Attorney could be deemed voluntary. As already noted, there is still a factual dispute as to whether the police advised petitioner that he could refuse to say anything if he so desired. The district court itself considered this to be the "most significant" aspect about the voluntariness issue. Therefore, at the evidentiary hearing, the court below must decide whether petitioner was deceived or tricked into giving the 1963 statements by being told merely that his rights would be protected if he did not sign anything. Of course, if the district court determines after the hearing on remand that petitioner had been informed of his right to remain silent, both the *Escobedo* and voluntariness issues can be resolved in favor of respondent.

*Failure to Comply with Time Limits of Habeas Corpus Act and Rule 81(a)(2), Fed.R.Civ.P.*

■ The federal Habeas Corpus Act provides in pertinent part:

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

"The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for a good cause additional time, not exceeding twenty days, is allowed. * * * " (28 U.S.C. § 2243).

Where, as here, the habeas corpus proceeding involves a person in custody pursuant to a judgment of a state court, Rule 81(a)(2) of the Federal Rules of Civil Procedure increases the additional time for the return of a writ or order to show cause from 20 to 40 days. Rule 81(a)(2) provides as follows:

"The writ of habeas corpus, or order to show cause, shall be directed to the person having custody of the person detained. It shall be returned within 3 days unless for good cause shown additional time is allowed which in cases brought under 28 U.S.C. § 2254 shall not exceed 40 days, and in all other cases shall not exceed 20 days."

From the language of the statute and the Rule, it is clear that in the case of a petition under 28 U.S.C. § 2254, like this one, the person having custody must respond within three days unless for good cause the district court exercises its discretion to grant additional time not to exceed 40 days. This legislative schedule evidences the viewpoint of the Congress that dispatch is of utmost importance in habeas corpus proceedings. Congress was undoubtedly influenced by the possibility that the habeas corpus petitioner might be unlawfully imprisoned, and the time limits demonstrate its concern for an expeditious determination of that issue. The language is mandatory, "shall not exceed 40 days." The district court is given discretion to require a reply between 3 and 40 days after the writ is filed, but not thereafter.[7] The Advisory Committee's notes to the 1971 amendment make it clear that the plight of the overworked state authorities was considered and the period of 40 days was nevertheless deemed the maximum that a petitioner could be made to wait without a response.[8]

---

**7.** In Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965), certiorari denied, 384 U.S. 954, 86 S.Ct. 1574, 16 L.Ed.2d 550, it was held that a district judge had the "inherent power" to grant additional time beyond the statutory limit for a return in habeas proceedings. We note that the Court did not have the benefit of the 1971 amendment to Rule 81(a)(2) and the Advisory Committee's notes thereto. It seems

possible that the Ninth Circuit would now reconsider its holding, but to the extent that its opinion conflicts with our decision here, we respectfully disagree.

**8.** The Notes of the Advisory Committee on Rules, speaking of the 1971 amendment, state:

"The substantial increase in the number of such proceedings [Section 2254 proceed-

■ Since the Attorney General's office did not file its motion to dismiss or for summary judgment until 106 days after the district court's order required it to answer or otherwise plead to the petition within 20 days, the requirements of Section 2243 and Rule 81(a)(2) were not met. Petitioner somewhat halfheartedly contends that he is entitled to be released *instanter* because of this breach. The Advisory Committee's notes on Rule 81(a)(2), as amended in 1971, state that "the time allowed in such a case for the return of the writ may not exceed forty days * * *," but no sanction is provided. We agree with the Sixth Circuit and Professor Moore's treatise that the Advisory Committee did not intend to provide for a habeas corpus petitioner's release in the event of a failure to make a timely return, for the burden of default would then fall upon the community at large. Watmuff v. Perini, 427 F.2d 527, 528 (6th Cir. 1970); Allen v. Perini, 424 F.2d 134, 138 (6th Cir. 1970), certiorari denied, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143; 7 Moore's Federal Practice, 2d ed., ¶ 81.05[4] at 81.64–81.65. Federal Rules of Civil Procedure 12 and 55(a) do not require that the petition be granted by default because Rule 81(a)(2) provides for limited application of the other Rules and default judgments are generally inappropriate in habeas corpus cases. Allen v. Perini, *supra* at 138.

The district court should have proceeded as if it had received a return from the state authorities, that is, it should have proceeded as provided at the close of 28 U.S.C. § 2243:

"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

See Allen v. Perini, *supra* at 138, 143; Witt v. Eyman, 343 F.Supp. 392, 394 (D.Ariz.1972). In some cases where the state authorities fail to file a timely return, it may not be necessary for the district court to conduct a full-scale hearing on the merits of the petition.

For example, the court may find from a careful examination of the petition that there is a procedural defect, such as a failure to exhaust state remedies. Allen v. Perini, *supra*, 424 F.2d at 138–139. In this case, however, we have already decided that an evidentiary hearing is necessary. A habeas corpus petitioner may not be required to wait in jail beyond the 40-day limit because the state authorities are tardy with the return. At a point no later than 40 days after the receipt of the writ, the district court must proceed to consider the petition as if a return had been properly made. The statute and Rule 81(a)(2), when read against the backdrop of the policy of dispatch in habeas corpus matters, dictate this procedure. It would also have been appropriate for the district court to censure the staff of the Illinois Attorney General and to refuse to consider the tardy return. See Curtis v. Perini, 301 F.Supp. 444, 445 (N.D.Ohio 1968), affirmed, 413 F.2d 546 (6th Cir. 1969).

*Grant of Respondent's Motion to Dismiss*

As noted above, the district court granted respondent's motion to dismiss for failure to state a claim as to the other points raised in the petition for habeas corpus. The petitioner asserted that the state trial court could not admit in evidence certain articles obtained by an allegedly unconstitutional search of the home of the Weinsteins. The petitioner also asserted that he was incompetent when he waived his right to be free from compulsion to testify against himself and testified in support of Mrs. Weinstein's motion for a new trial, so that said testimony, containing his criminal record, should not have been considered at his murder trial. Petitioner also attacked the competency of his trial and appellate counsel. For the reasons given in the district court's first opinion (366 F.Supp. 1294), we agree that the dismissal as to these issues was proper.

The district court's dismissal order of November 30, 1973, is affirmed. Its

ings] in recent years has placed a considerable burden on state authorities. Twenty days has proved in practice too short a

time in which to prepare and file the return in many such cases."

judgmₑnt of March 11, 1974, is reversed, and the cause is remanded with instructions to grant petitioner an evidentiary hearing with respect to whether he had been advised of his right to remain silent and had voluntarily made the oral statement of October 2, 1963, with costs on appeal to be borne by the respective parties.