Frank J. RUIZ, Petitioner-Appellee,

v.

Elmer O. CADY, Respondent-Appellant.

No. 81–1164.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1981.

Decided Sept. 30, 1981.

Michael R. Klos, Atty. Gen. of Wis., Madison, Wis., for petitioner-appellee.

Charles Bennett Vetzner, State Public Defender, Madison, Wis., for respondent-appellant.

Before FAIRCHILD, Senior Circuit Judge, MARKEY,* Chief Judge, and CUDAHY, Circuit Judge.

\* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. The sole ground for relief asserted was that the prosecutor withheld an alleged agreement between the prosecutor and the chief state witness, Garcia, which gave Garcia a motive to make his trial testimony more inculpatory.

FAIRCHILD, Senior Circuit Judge.

This appeal raises the question whether the district court abused its discretion in granting Frank Ruiz' petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. That petition was granted, without determination of the merits, because the Wisconsin attorney general failed to comply with a court order requiring that copies of the state court transcript of Ruiz' trial be filed within twenty days. The district court later denied the respondent's 60(b) motion for relief from the grant of the writ. We conclude that to impose such a drastic remedy in this case was an abuse of discretion. We therefore reverse.

## I.

On November 7, 1980, this court vacated the district court's judgment, 453 F.Supp. 617, denying the petition submitted by petitioner-appellee Ruiz, for a writ of *habeas corpus. Ruiz v. Cady*, 635 F.2d 584 (7th Cir. 1980).[1] In doing so, we directed the district court to examine the state transcripts before deciding the merits of Ruiz' constitutional claim. Counsel for both parties to the appeal were notified by telephone of our decision. The Wisconsin attorney general, counsel to respondent-appellant Cady, Superintendent of the Wisconsin State Reformatory, received a copy of our mandate on December 3, 1980. Soon after this, on December 16, 1980, petitioner filed a supplement to his *habeas* petition.[2] On December 24, 1980, the district court ordered the respondent to answer the supplemental petition and to file copies of the state trial transcripts within twenty days, by January 13, 1981. By this time, respondent had known for more than one and one-half months that the district court would need the state court transcripts before it could fulfill this court's mandate.

2. In his supplemental petition, Ruiz claimed that one of the jury instructions given at his trial created an unconstitutional presumption in light of *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979).

Respondent did not comply with the district court's order of December 24, 1980, by the assigned date. Instead, on January 14, 1981, the day after the supplemental response and transcripts were due, counsel for the respondent contacted the district court by telephone and requested an extension of time of ten to fifteen days, promising to submit a formal motion at a later date. The reason for the delay, the assistant attorney general assigned to the case explained, was that his administrator was in the process of assigning the case to a different attorney in the office. He also stated that the state court transcripts had not yet been requested. Counsel for Ruiz was not informed of respondent's request.

The district court did not immediately reply to respondent's *ex parte* request. The next day, however, on January 15, 1981, the district court issued an order granting Ruiz' writ of *habeas corpus*. It did so with certain misgivings, it stated, because "the result penalized the public for the conduct of the office of the attorney general . . . ." *Ruiz v. Cady*, 507 F.Supp. 50, 52 (E.D.Wis. 1981). Nevertheless, it found that the attorney general's practice of "routinely delaying habeas corpus proceedings is particularly reprehensible in light of the fundamental purpose of the . . . [writ] to 'afford[ ] . . . a swift and imperative remedy in all cases of illegal restraint or confinement.' *Fay v. Noia*, 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963)." *Id.* at 51. In this case, the court was convinced, further delay would constitute a denial of Ruiz' right to due process of law. Therefore, "[i]n light of the dilatory practices of the state attorney general's office . . . and the apparent disregard for this court's orders and the eastern district's local rules which that office has displayed, I conclude that an order to show cause would serve no useful purpose." *Id.* The district court granted a ninety-day stay of its order, however, so that the state could retry Ruiz on the offense for which he was convicted, that being first degree murder. If the retrial was not actually commenced within ninety days, the stay was to terminate, and the writ was to be issued immediately.

A few days later, on January 20, 1981, respondent moved for relief pursuant to Fed.R.Civ.P. 60(b)(1), which provides that relief from a judgment may be granted for "excusable neglect." At the same time, he tendered his response and the transcripts and moved under Fed.R.Civ.P. 6(b)(2) for an extension of time to the date of filing. In the affidavit submitted with the motions, respondent explained that he failed to file the required transcripts and answer by January 13 or to request an extension of time for such filing because the file and order "were in the administrative channels for reassignment." More specifically, the affiant stated that he received this court's mandate on December 3, 1980. He did not take any steps with regard to the case, however, until December 22, 1980, when he sent the file to the Administrator of Legal Services of the Wisconsin Department of Justice (the "Administrator") with a memo requesting that the case be reassigned. (Affiant had previously been part of the Criminal Appeals Unit, but had been transferred to different work. He had continued, however, to be responsible for this case.) At the same time, he wrote a letter to the district court advising the court that the case was being reassigned, and stating for the record respondent's opposition to the motion to supplement the petition. The affiant received the district court's order of December 24, 1980, on December 29, 1980, at which time he immediately sent the order to the Administrator so that it could be given to the new attorney assigned to the case. Nothing further was done on the case until January 14, the date after the filings were due in the district court, when the Administrator told the affiant that the case would be reassigned if the affiant could arrange for an extension of time for complying with the court's order of December 24, 1980.

The district court denied both of respondent's motions on January 26, 1981, holding that the respondent's explanation fell far short of demonstrating excusable neglect. It stated, "I consider this conduct to constitute bureaucratic paralysis rather than ex-

cusable neglect. This disregard for the court's orders and for the petitioner's right to a swift resolution of his habeas claims poses a threat to the orderly administration of justice." *Ruiz v. Cady*, 507 F.Supp. 50, 52 (E.D.Wis.1981). The court also noted that the affidavit and motion did not address the numerous prior instances of delay and neglect referred to in its January 15 order. Respondent appeals from the January 15 and the January 26 order.[3]

## II.

As the matter stood after the remand by this court, it had been decided that Ruiz' petition could not properly be denied without examination of the transcripts in order to evaluate petitioner's claim that Garcia changed his testimony after his alleged agreement with the state. Neither could the ultimate merits be determined in favor of Ruiz without such examination. The state was ordered to produce the transcripts and a reasonable period for doing so had been allowed. The time had elapsed without performance or excuse. A day later the state informally made an *ex parte* request for time and offered a not very compelling explanation. Judge Gordon and his colleague, Judge Warren, had experienced several delays by the state in other so-called "prisoner" cases, and had given warnings.[4] In substance, in this case, Judge Gordon imposed a default judgment as a sanction, apparently to deter similar conduct prejudicial to other prisoners and inconvenient to the court, as well as to avoid further delay in disposition of Ruiz' claim.

A default judgment, without full inquiry into the merits, is especially rare when entered against a custodian in a *habeas corpus* proceeding. Although such a remedy is extreme, and may well conflict with the public's right to protection, we think it should be preserved as a sanction against a respondent's unwarranted delay. Where the respondent is guilty of long and inadequately explained delays, it may be presumed that the petitioner is being illegally confined. *See Troglin v. Clanon*, 378 F.Supp. 273, 280 (N.D.Cal.1974). In those situations, the petitioner's due process rights would be denied, and "[t]he writ of habeas corpus, challenging illegality of detention, . . . reduced to a sham if the trial courts [did] not act within a reasonable time . . . especially . . . upon remand of a pending petition from [the appeals court]." *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978). This is because Congress has directed that *habeas* petitions be reviewed forthwith, 28 U.S.C. § 2243, and the United States Supreme Court has emphasized that *habeas corpus* proceedings are intended to provide "swift, flexible, and summary determination[s]." *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 271, 98 S.Ct. 556, 564, 54 L.Ed.2d 521 (1978); *United States ex rel. Mattox v. Scott*, 507 F.2d

---

**3.** On February 25, 1981, the district court granted respondent's motion for a stay pending appeal, the stay commencing as of the date of the motion, February 2, 1981.

**4.** Those cases are: *Shebelski v. Israel*, Case No. 79–C–889 (E.D.Wis., May 28, 1980) (Warren, J.); *Johnson v. Cady*, Case No. 79–C–299 (E.D. Wis., June 16, 1980); *Shelley v. Percy*, Case No. 79–C–885 (letter dated July 30, 1980); *Mallory v. Cady*, Case No. 80–C–393 (E.D.Wis., July 22 and September 5, 1980) (Warren, J.); and *Cenova v. Buehler*, Case No. 80–C–802 (original order dated November 26, 1980) (denying a request for an extension of time in which to file a brief in response to a brief supporting a petition for a writ of *habeas corpus*).

In *Mallory v. Cady, supra*, defendants (respondents here) had also requested an extension of time to answer a complaint after the due date. Judge Warren at that time gave defendants a clear warning:

The defendants in this case have not filed a timely request for an extension under rule 6(b)(1), nor have they complied with the dictates of rule 6(b)(2). Consequently, the Court finds the defendants' motion for an extension of time to file their answers in this case must be and hereby is denied. As indicated in a recent opinion, this Court will no longer tolerate the repeated delays of defendants' counsel in cases like this one. *Shebelski v. Israel*, 79–C–889 (May 28, 1980). *See Johnson v. Cady*, 79–C–299 (E.D.Wis., June 16, 1980) (Gordon, J.). In the interest of justice, however, the Court will permit defendants to file a proper motion under rule 6(b)(2) within ten (10) days of receipt of this order.

919, 923 (7th Cir. 1974). A default judgment for the petitioner may then be the necessary remedy for the respondent's delay.[5]

In this case, however, we think the district court abused its discretion in granting a default judgment on Ruiz' habeas corpus petition. The judgment was entered on January 15, 1981, and the respondent attempted to cure the default by making a showing within five days in support of a motion for relief. The district court rejected this attempt in its order of January 26, 1981. Although almost three years had passed since Ruiz originally filed his application for a writ of habeas corpus,[6] the only delay that can be attributed to the state during this entire proceeding is the five-day delay involved here. This relatively short delay, certainly of some consequence if the petitioner has been wrongly confined, does not, in our opinion rise to the level of a due process violation. Ruiz has not shown or argued any substantial personal harm from the delay. Indeed the district court acted on its own motion in ordering issuance of the writ. A reduced briefing schedule for the respondent could easily offset the short delay caused by the late filing of the transcript. Where harm to the petitioner is apparently so slight and other adequate remedies are available, granting the writ by a default judgment amounts to an abuse of discretion.

By rejecting a default judgment in this case, however, we do not mean to condone the respondent's negligence, nor do we mean to imply that respondents will always be allowed at least one late filing or delay in a habeas case. To the contrary, we are in complete sympathy with the district court's concern that the attorney general's staff does not live up to its obligations in prisoner cases.[7] We agree that the respondent offered an inadequate explanation for the delay in this case. Here, however, there are several alternatives the court might have employed as a more appropriate sanction. It could have notified the attorney general that in the future, requests for extension would be routinely denied. It could have shortened the normal briefing schedule and otherwise sought a speedier determination, in order to make up to Ruiz for the state's tardiness. It could have disciplined counsel or instituted contempt proceedings against counsel for the state, the attorney general's legal services administrator or the attorney general himself. See United States ex rel. Mattox v. Scott, 507 F.2d 919, 924 (7th Cir. 1974). The availability of these alternative sanctions, does not mean, however, that there might not come a time when entry of default would be appropriate.

The judgment appealed from is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

---

5. The Sixth Circuit has said that default judgments are not available in habeas corpus proceedings and that "in spite of the untimeliness of the state's return, the district court would have no power to grant the writ of habeas corpus in the absence of an evidentiary hearing and unless and until the averments of the petition have been proved by competent evidence." Allen v. Perini, 424 F.2d 134, 138 (6th Cir.), cert. denied, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). Contra, Troglin v. Clanon, 378 F.Supp. 273, 280 (N.D.Cal.1974); Witt v. State ex rel. Eyman, 343 F.Supp. 392, 394 (D.Ariz.1972). These district courts disagreed with Allen v. Perini but denied default as a matter of discretion. Allen relied upon the language of the habeas statute in holding that the writ was unavailable unless the petitioner was confined in violation of the Constitution or laws of the United States. Allen v. Perini, supra at 138. As unreasonable delays result in a violation of due process, arguably the Sixth Circuit would not be in complete disagreement with our conclusion that default judgments should be available as an ultimate sanction in habeas cases.

6. Ruiz filed the instant petition on March 30, 1978.

7. See note 4, supra.