Emilcar BERMUDEZ, Petitioner,

v.

Theodore REID, Superintendent, and
Robert Abrams, Attorney General,
Respondents.

No. 83 Civ. 711(CES).

United States District Court,
S.D. New York.

July 28, 1983.

As Amended Aug. 2, 1983.

On Motion to Vacate Default Judgment.
Aug. 30, 1983.

Emilcar Bermudez, pro se.

Robert Abrams, Atty. Gen., State of N.Y. by George C. Perry, Asst. Atty. Gen., New York City, for respondents.

## MEMORANDUM DECISION

STEWART, District Judge:

For reasons explained more fully below, we have before us what we take to be a motion for a default judgment by a habeas corpus petitioner. The petitioner, a state prisoner, was convicted in 1979 of Second Degree Robbery and has served four years[1] of a five to ten year sentence. Despite conflicting authority as to whether default judgments may be entered in habeas actions, we have concluded that the motion should be granted.

On March 29, 1983, this court ordered respondents to answer petitioner's petition within 30 days. By letter dated May 9, 1983, more than a week after the deadline had run, an Assistant Attorney General ("Assistant"), identifying himself as counsel for respondents, sought "a brief extension" of time in which to answer the petition.[2] The Assistant cited a heavy workload in requesting the extension. An extension was granted until May 20, 1983, the date requested in the Assistant's letter.

---

1. The petition states that the date of conviction was July 31, 1979. The Central Files Office of the New York State Department of Corrections informed the court that petitioner began serving his sentence on August 28, 1979.

2. The letter was received by chambers on May 10, 1983.

Just after the 30 day deadline had run, the petitioner moved for summary judgment on the ground that an answer was overdue. The extension having been granted, the motion was denied on May 11, 1983, with leave to renew.

In a letter to the court dated May 27, petitioner did renew his motion for summary judgment, again claiming entitlement to relief because an answer from respondents was overdue. A copy of the letter was apparently sent to the Assistant.[3] No word of any kind having been received, chambers called the Assistant on June 3, now two weeks since the extension had run. The Assistant again indicated that he was overburdened with work (particularly habeas petitions) and requested that he be allowed until June 9, 1983 to file an answer. The extension was granted, however the Assistant was advised that his failure to communicate with the court about the overdue answer was deemed troubling. The Assistant was also told that should there be any doubt as to his ability to submit an answer by June 9, he should notify the court.

On June 16, there having been neither an answer filed nor an extension sought, chambers again called the Assistant. The Assistant was told that his failure to communicate with the court in the face of a now repeatedly overdue answer was deemed a matter of serious concern. No explanation was offered. An extension of time to file an answer was granted until June 24, a date suggested by the Assistant. The Assistant was warned that the new deadline was the "final" date by which to file his answer. To date, a month since the "final" deadline has run, no answer has been filed and neither the Assistant nor any one else from the Attorney General's Office has contacted chambers with regard to the case. Four months have elapsed since respondents were first ordered to file their answer.

Rule 55 of the Fed.R.Civ.P. provides for entry of a judgment by default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." We think this rule best describes the relief which petitioner seeks and accordingly treat his motion for summary judgment as an application for entry of a judgment by default. *See Witt v. Arizona,* 343 F.Supp. 392, 393 (D.Ariz.1972).[4] The question before us is whether we may grant this application.

Two lines of authority have emerged on the issue of whether a Rule 55 default may be entered in habeas proceedings. The Sixth Circuit first addressed the question in *Allen v. Perini,* 424 F.2d 134 (6th Cir.1970), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143, where it held that a seven day delay by the State in filing an answer did not relieve the prisoner of his "burden to show that he is in custody in violation of the Constitution." *Id.* at 138. "Despite the delinquency of the State, the District Court was obligated to decide the case on the merits.... We hold that Rule 55(a) has no application in habeas corpus cases...." *Id.* The obligation of the district court to "decide the case on the merits," the *Allen* court held, requires that it hold "an evidentiary hearing ... [in which] the averments of the petition have been proved by competent evidence." *Id.* The Sixth Circuit reaffirmed this view in *Watmuff v. Perini,* 427 F.2d 527, 528 (6th Cir.1970), and both the Fifth Circuit, *Broussard v. Lippman,* 643 F.2d 1131, 1134 (5th Cir.1981), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (parole board's eight day delay in filing report "standing alone, does not provide a sufficient basis for granting the writ"); *but see Frick v. Quinlin,* 631 F.2d 37, 40 (5th Cir.1980) (court free to disregard tardy answer to petition), and the Eleventh Circuit, *Goodman v. Keohane,* 663 F.2d 1044, 1047 n.

---

**3.** The letter bore the words "cc: [The Assistant]." The Assistant also seemed aware that petitioner had moved for summary judgment during conversations chambers had with him.

**4.** Motion papers should be treated with liberality when the movant is *pro se. Cf. Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 598, 30 L.Ed.2d 652 (1972) (per curiam) (*pro se* pleadings held to less stringent standards).

4 (11th Cir.1981) (no reason given), have indicated an apparent intention to adhere *Allen's* bright line rule.

While the Fifth, Sixth and Eleventh Circuits seem to reject any application of Rule 55 to habeas proceedings, other courts have taken a less rigid approach and found that the question is left to the district court's sound discretion. In *Ruiz v. Cady,* 660 F.2d 337 (7th Cir.1981), for example, the Seventh Circuit reversed a district court's grant of judgment by default finding an abuse of that discretion where only a five day delay was attributable to the state. *See id.* at 341. Nevertheless, the court expressly rejected the *Allen v. Perini* approach, *id.* at 340–41, n. 5, and concluded that default "should be preserved as a sanction against a respondent's unwarranted delay." *Id.* at 340. *See also Troglin v. Clanon,* 378 F.Supp. 273, 280 (N.D.Cal.1974); *Witt v. Arizona,* 343 F.Supp. 392, 393–94 (D.Ariz. 1972); *Winn v. Page,* 311 F.Supp. 691, 692– 93 (W.D.Okl.1970).

■ We agree with the cases which find that Rule 55 is available in habeas actions, and that default may be entered in appropriate circumstances. We note at the outset that Rule 55 appears applicable to habeas petitions by its own terms. The rule states, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules" default shall be entered. Rule 81(a)(2) provides that a return shall be filed within not more than 40 days. Thus, since the federal rules of civil procedure do prescribe how respondents are to "defend" in a habeas action, Rule 55 appears applicable.

Of relevance too is Rule 11 of the recently enacted Rules Governing § 2254 cases, 28 U.S.C. foll. § 2254 (1976) which provides, "The Federal Rules of Civil Procedure, to the extent they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." According to the Advisory Committee Note to Rule 11:

> Rule 11 . . . allow[s] the court considering the petition to use any of the rules of civil procedure (unless inconsistent with these rules of habeas corpus) when in its discretion the court decides they are appropriate under the circumstances of the particular case. The court does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus. Rule 11 merely recognizes and affirms their discretionary power to use their judgment in promoting the ends of justice.

Since there is nothing "inconsistent" between Fed.R.Civ.P. 55 and "these rules of habeas corpus" (the Rules Governing § 2254 cases), the question of whether Rule 55 should be found applicable appears to turn on whether, as a matter of sound discretion, it would be "appropriate" to so find it.

In concluding that Rule 55 can appropriately be applied in habeas proceedings, we are guided by what we consider to be the ends which federal habeas relief seeks to achieve, and by what we consider to be the proper roles of state respondents and the federal courts in serving those ends.

The Supreme Court has emphasized that the writ of habeas corpus is intended to provide " 'a swift and imperative remedy in all cases of illegal restraint or confinement.' " *Fay v. Noia,* 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963) (quoting 3 Blackstone Commentaries 129). *See also Preiser v. Rodriguez,* 411 U.S. 475, 495, 93 S.Ct. 1827, 1839, 36 L.Ed.2d 439 (1973) (habeas claim should receive "a swift, flexible, and summary determination"). The governing statute also dictates expediency. *E.g.,* 28 U.S.C. § 2243 (1976) (habeas claims to be dealt with "forthwith"). Put simply, "The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time." *Jones v. Shell,* 572 F.2d 1278, 1280 (8th Cir.1978). Indeed, a sufficient delay may offend due process. *See id. See also Ruiz v. Cady,* 660 F.2d 337, 341, n. 5 (7 Cir.1981). Finally, looking to congressional intent, some courts have held that the 40 days prescribed in Fed.R.Civ.P. 81(a)(2) as the time in which an answer must be filed

is a mandatory deadline not to be exceeded. *Mattox v. Scott,* 507 F.2d 919, 923 (7th Cir.1974); *Allen v. Perini,* 291 F.Supp. 144 (N.D.Ohio 1970).

Thus, in evaluating what appropriate actions are open to a district court when a respondent has repeatedly failed to answer a habeas petition, the one clearly closed route is to wait for the state to respond. An obvious corollary of this rule is that at some point, after the court has made reasonable efforts to obtain a response to the petition, no further efforts need or should be made. The district court must take action on the petition without the state's answer. In *Allen v. Perini,* 424 F.2d 134 (6th Cir.1970), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143, the Sixth Circuit held that the action the district court must take is to hold an "evidentiary hearing" at which, if petitioner is to prevail, "the averments of the petition [must be] proved by competent evidence." *Id.* at 138. The *Allen* court did not specify the nature of the hearing which must be held, but we see two possibilities in this case. The first possibility would merely have the petitioner put in his uncontested evidence. As long as the evidence set forth a valid claim, the petitioner would be entitled to relief. Under the second possibility, the district court would take a more active, in a sense prosecutorial, role in an effort to unearth contrary evidence and to test the merit of petitioner's claims.[5]

In a case where the petition clearly sets forth a claim which, if true, would entitle the petitioner to relief, we think neither approach makes sense. The first approach would not make sense because at the hearing the petitioner would simply testify to that which he had already set forth in his petition. Testimony being "competent evidence," *Allen v. Perini,* 424 F.2d at 138, and there being no contrary facts in evidence, petitioner would thus have met his "burden [of proving] that he is in custody in violation of the constitution," *id.,* by merely repeating in court the averments of his sworn petition.

The pointlessness of this exercise leads us to think that the type of hearing the *Allen* court had in mind would be one in which the court takes a somewhat adversarial role in order to develop contrary facts and test the merits of the petition. While there may be instances when such an approach would be appropriate,[6] we think in the main this is not a good approach and, *a fortiori,* that it would be inadvisable to hold that district courts *must* follow this approach whenever respondents fail to file an answer. We reach this conclusion because the approach in question shifts from respondent to the courts a role that neither federal law nor historical notions about the judicial function suggest ought to be shifted.

Looking first at federal law, there can be no question but that Congress had in mind distinct roles for the court, the petitioner and the respondent in a habeas action. The scheme outlining these roles is set out in the Rules Governing Section 2254 cases in the United States District Courts [hereafter "2254 Rules"], 28 U.S.C. foll. § 2254 (1976). *See* Rule 1, 2254 Rules. Rule 4 provides

---

**5.** We do not read *Allen* to suggest that a third possibility, having a hearing with the respondent participating, would be appropriate, especially where, as here, no answer has ever been filed. Cases following *Allen* have noted that it may be appropriate to preclude the respondent from putting in a defense when it is merely late in filing an answer. *See, e.g., Mattox v. Scott,* 507 F.2d 919, 924 (7th Cir.1974). *See also Curtis v. Perini,* 301 F.Supp. 444, 445 (N.D.Ohio 1968), *aff'd,* 413 F.2d 546 (6th Cir.1969).

Further, as we discuss *infra,* federal law *commands* that the state respondent file an answer. To allow the state to participate in a hearing without its having defended as federal law requires, would send a message to the state that

the requirement may be ignored. Congressional intent would be thwarted and the courts would be forced to schedule a hearing regardless of the merit of the petition or the need for that hearing. When the state follows the federally mandated procedure and files an answer, hearings are usually avoided either because the question for resolution is a legal one and may be decided by reference to the papers, or because it becomes apparent the petition is frivolous.

**6.** For example, if the petition is so inartfully pleaded that it is not clear whether a claim is stated.

that it is the *respondent* who must file an answer. Rule 5 details what the answer must contain and requires that the *respondent* (1) respond to the allegations of the petition, (2) state whether the petitioner has exhausted his claims, (3) attach relevant portions of transcripts or a narrative summary, and (4) attach copies of the petitioner's brief on appeal and a copy of any appellate decisions. Thus it would contravene the federal statutory scheme for the district court to take over these functions, and these functions would have to be taken over if the court were to "test" the merits of a petitioner's claim.

■ It would also contravene widely accepted norms as to the proper role of the federal courts to have the courts act as adversary, and attempt to uncover evidence to test the merits of a habeas petition, when the respondent failed to do so. Traditionally, the federal courts have been seen to have plenary power "to say what the law is," but they must "apply the [law] to particular cases." *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (U.S.1803). A "case" is, as far as the court is concerned, the factual record produced by two parties in an adversarial setting; it is up to the parties, and not the court, to develop that record. The court's job is to decide what law applies and what the true facts are from the evidence in the record. *See, e.g.,* B. Schwartz, *Administrative Law* at 10–11 (1976) (contrasting courts with some administrative agencies); J. Frank, *Courts On Trial: Myth and Realty in American Justice* at 80–102 (1st paperback ed. 1973) (proposing remedies for problems created by this model). Departures from this model have long been recognized to be unwise, *see, e.g., In Re Larsen,* 17 N.J.Super. 564, 86 A.2d 430, 435 (1952) (Brennan, J. concurring), and even run the risk of violating due process. *See In Re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (one person "judge-grand jury" violated due process where judge assumed prosecutorial role; Court troubled by judge's words "*we* could do some checking and investigating *ourselves*". *Id.* at 137, n. 3, 75 S.Ct. at 624, n. 3. (Emphasis supplied by S.Ct.)). For the foregoing reasons we reject the notion that the district court must hold an evidentiary hearing in lieu of granting a judgment by default.

■ We also reject the notion that we must institute contempt proceedings against counsel for respondent as an alternative to entering a default. *See Ruiz v. Cady,* 660 F.2d 337 (7th Cir.1981); *Mattox v. Scott,* 507 F.2d 919, 924 (7th Cir.1974). While this remedy might bring about future compliance in habeas petitions and may be appropriate in some instances, it does not produce a resolution of petitioner's claim. It would, in all likelihood, start the clock on a new deadline for respondent to submit an answer. The petitioner is entitled to resolution now.

We are also troubled by the use of the contempt sanction for another reason. In *Troglin v. Clanon,* 378 F.Supp. 273 (N.D.Cal. 1974), the district court stated what we consider to be a sound principle. Indeed, we would extend that principle. The court stated:

> If a state fails to provide an adequate staff and legal resources to meet the demands of federal habeas proceedings, the burden of delay cannot be placed upon a petitioner. The state must either petition Congress for an amendment of [the federal habeas laws] or provide more staff and resources. Considerations of administrative convenience and savings of expenses do not justify denials of or heavy burdens upon constitutional or statutory rights.

*Id.* at 281. We would extend the principle to include the proposition that the federal courts should not be made to take on an adversarial function, as we have already concluded they should not, because the state did not appropriate the resources to do so itself. And, of relevance here, we would also apply the principle to an attorney assigned to answer a state habeas petition who has been made the subject of a contempt proceeding. While we think there might be facts to justify a finding of contempt here, were it shown (as the Assistant

has suggested in communications with this court) that inadequate funding by the state has in whole or in significant part been responsible for delay, we would not be inclined to punish respondent's counsel for this fact. Thus, unless judgment by default were available, the court might have no option available to it which could have the effect of discouraging dilatoriness in the future. We share the concern of other courts that the "community at large" not be burdened by the release of a prisoner not otherwise entitled to release. *See Allen v. Perini*, 424 F.2d 134, 138 (6th Cir.1970), *cert. denied*, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143; *Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir.1974). But we also note that the community may best be placed to respond to the underlying problem, be it incompetency or underfunding, by its direct control of the elected officials who make policy and spending decisions.

Finding that the alternatives to entry of default are anything but panaceas to the problem before us, we are persuaded that a district court may enter a Fed.R.Civ.P. 55 default in a habeas action pursuant to Rule 11 of the 2254 Rules, 28 U.S.C. foll. § 2254 (1976).

■ The remaining question is whether we should enter a judgment by default in this case. We recognize that "[t]he preferred disposition of any case is upon its merits and not by default judgment . . . . However, this judicial preference is counterbalanced by considerations of social goals, justice and expediency, a weighing process which lies largely within the domain of the trial judge's discretion." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970). In determining that default is appropriate here, we are guided by the following conclusions. First and foremost, we find that petitioner has stated at least one valid constitutional claim [7] and that his claim has been exhausted in state court.[8] We deem this to be the threshold hurdle that must be met before any entry of default may be considered. Second, while petitioner has diligently sought to have his claims heard, counsel for respondent has been dilatory in the extreme. Third, counsel for respondent never communicated with the court on the three occasions when he ignored deadlines set by the court despite clear admonitions that he do so. Fourth, the State Attorney General has been dilatory and casual about missing deadlines in the past.[9] Fifth, petitioner has served a substantial amount of his sentence.[10]

This case does involve "issues of substantial public importance." *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2685 at 424 (1983). However, unlike other courts to consider the question, we do not believe that the issues tilt neatly against default. It is true that the public has an interest in having properly convicted prisoners serve the sentence imposed. But it is also true that all citizens have an interest in preserving the right not to be incarcerated in violation of the constitution

---

**7.** The lengthy petition sets forth eight grounds for relief. We need only determine that one of them states a valid claim. We conclude that Ground One does. Ground One states, *inter alia:*

Defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the U.S. Const[itution] . . . . Defense counsel provided ineffective assistance for the following reasons: (A) He failed to take the time to review and prepare both the law and facts relevant to the defense and failed to employ at the trial basic principles of criminal law and procedures . . . .

**8.** The petition indicates that identical claims were presented to the state court via a § 440.10 *coram nobis* motion. The motion was denied and leave to appeal to the Appellate Division was also denied. This exhausts petitioner's claims. *Guyton v. LeFevre*, 560 F.Supp. 1237, 1242 (S.D.N.Y.1983).

**9.** It has been our experience, and apparently that of other judges in this district, *see, e.g., Simmons v. Dalsheim*, 543 F.Supp. 729, 733 n. 1 (S.D.N.Y.1982), *aff'd*, 702 F.2d 423 (2d Cir. 1983), that the Attorney General's Office has treated prisoner related actions with inattention.

**10.** While we think this factor should never be dispositive of whether to enter a default, we think it may weigh in the balance in determining whether default is appropriate as the next step to take.

or federal law. We have already noted that the right to habeas review is deemed important under federal law. We would only add that it was also deemed sufficiently important to warrant specific protection in the constitution. U.S. Const., Art. I, § 9, cl. 2. It is out of deference to that right, and of our "duty to protect the integrity of the judicial process," *Dolphin Plumbing Co. of Florida, Inc.,* 508 F.2d 1326, 1327 (5th Cir. 1975), that we conclude default is appropriate in this case.

There having been no "appearance" by respondent in this action,[11] the three day notice requirement of Fed.R.Civ.P. 55(b)(2) is not implicated,[12] and a judgment by default is hereby entered. The State shall retry or release the petitioner within 60 days.

SO ORDERED.

### ON MOTION TO VACATE DEFAULT JUDGMENT

Before us are motions by respondents to vacate a judgment of default entered by memorandum decision on July 28, 1983, and for a stay of our order contained in that July 28 decision directing that the state retry or release petitioner within 60 days. The return date on these motions was August 27, 1983. We deny both motions.

So that the record is clear, we address at the outset certain factual characterizations made by the respondents. First, in reviewing the sequence of events leading up to our July 28 decision, the state has, perhaps understandably, cast those events in a more appealing light than they should be. In paragraph 8 of the Perry affidavit, the affiant states that respondents' letter request for an extension dated May 9, 1983 (and received in chambers on May 10) was made "[p]rior to the expiration of respondents' time to answer." In fact, our Order of March 29 stated, "I hereby order Respondents to submit an answer *within 30 days of the date of this Order*" (emphasis added), which meant by April 28. We note this fact since this was the first request for an extension made to the court (indeed, the only one initiated by respondents themselves) and we wish to make clear that from the start respondents appeared inattentive to this petition.

Paragraph 9 of the Perry affidavit is also misleading. First, inasmuch as the wording of paragraph 9 is capable of a contrary interpretation, we feel obliged to underscore the fact that it was the court which contacted respondents following the next two missed deadlines, not the other way around. Second, we are unable to agree with respondents' recollection of the resulting discussions. The court was not "advised of the delay in the receipt of the full state court record" nor "informed of the necessity to devote substantial attention to the preparation and filing of a writ of certiorari in ... *Silverstein v. Henderson.*" Although this explanation would not have excused respondents' failure to meet, by this point, three deadlines, or their failure to contact the court at all after the last two had run, the court would have welcomed some explanation beyond the exceedingly little which was offered. Our July 28 decision fairly characterizes the content of those discussions.[1]

We also think it appropriate to comment on respondents' contentions in paragraphs 21–22 of the Perry affidavit. Respondents submit "that in considering the question of default this Court should not take into consideration the period of time between the assignment of this matter to the affiant (April 8, 1983) and the expiration of the

---

11. We conclude that the single letter initiated by the Assistant asking for an extension did not constitute an appearance. *See Rutland Transit Co. v. Chicago Tunnel Terminal Co.,* 233 F.2d 655 (7th Cir.1956).

12. We also think that petitioner's motion for summary judgment, apparently sent to the Assistant, *see* n. 3, *supra,* and our admonition that

the June 24 deadline was "final," probably constituted notice.

1. Our recollection of the relevant conversations is clear and is also confirmed by contemporaneously recorded summaries we made of those conversations.

period of extension (June 27, 1983)." [2] It is on this basis that respondents calculate "the period of delay" as "31 or 34 days." ¶ 23 Perry Aff. In light of the still unexplained failures to miss the deadlines set during this period and to contact the court when the deadlines had run, we see no reason to ignore this entire passage of time. Our July 28 opinion makes clear that the total time elapsed is but one of five factors we found persuasive in entering a judgment by default, but with respect to this factor we think two calculations are relevant. In reaching our July 28 decision, we took into consideration the approximately 121 days which passed between the time respondents were ordered to answer and the date of our default decision. On this motion, we consider that another 17 days passed before respondents submitted their answer (along with their motions). We repeat that the *amount* of time which has passed is but one of a number of factors underlying our consideration of the issues.[3]

Turning to respondents' legal contentions, we address first the argument that the relevant statutes permit the courts to take on respondents' role and themselves develop the case against a habeas petition. Our July 28 decision spells out why we think that federal law does not intend this approach and why, as a rule, we think such an approach is both uncalled for and unwise. We add only that we do not believe that either 28 U.S.C. § 2243 or Rule 4 of the Rules Governing § 2254 cases, cited by respondents, suggests a contrary conclusion. Section 2243 does, in its last sentence, contain the words "the court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

However, the previous seven paragraphs set forth the procedures by which an answer is to be obtained from respondents and how the case should be dealt with thereafter. Accordingly, we think section 2243's last sentence contemplates that an answer has been timely filed and is before the court when the court "summarily hear[s] ... and dispose[s] of the matter." Rule 4 also allows for "summary dismissal" of claims by the court, but this is only when it "plainly appears from the face of the petition ... that the petitioner is not entitled to relief." Obviously, summary dismissal would be inappropriate under Rule 4 when, as was true here, the petition states valid claims.[4]

Respondents also urge that a default judgment should be set aside if it becomes apparent on a motion to vacate that one or more of the claims is unexhausted. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Although respondents have relegated this argument to one brief paragraph in their supporting affidavit, we think it warrants some discussion. 28 U.S.C. § 2254(b) provides that "a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." A number of courts have held that the requirement is not jurisdictional in nature, *e.g., Graham v. Mancusi,* 457 F.2d 463, 468 (2d Cir.1972); *Wynn v. Smith,* 446 F.2d 341, 344–45 (5th Cir.1971); *Speaks v. Brierley,* 417 F.2d 597, 600 (3rd Cir.1969), *cert. denied,* 397 U.S. 1051, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970), but the trend of recent decisions might be construed to suggest that exhaustion is at least "quasi-jurisdictional," in the sense that

---

**2.** For unknown reasons, respondents apparently thought the "final" deadline date was June 27 not June 24. This was not the case.

**3.** With regard to the issue of time, respondents argue that the limit set forth in Fed.R.Civ.P. 81(a)(2), allowing them up to 40 days to respond, may be extended. However this may be, we think that to allow a total of 138 mostly unaccounted for days for the submission of an answer would run afoul of at least the spirit of this congressionally prescribed limit. The rule reads in relevant part:

> The writ of habeas corpus, or order to show cause, shall be directed to the person having custody of the person detained. It shall be *returned within 3 days unless for good cause* shown additional time is allowed which in cases brought under 28 U.S.C. § 2254 shall not exceed 40 days....

**4.** We also do not conclude that the All Writs Act, 28 U.S.C. § 1651, requires that the federal courts take over the role assigned under the habeas statutes and relevant rules to state respondents.

unexhausted and even "mixed" petitions *must* be dismissed by the district courts and cannot entitle a petitioner to relief. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Gulliver v. Dalsheim,* 687 F.2d 655, 658 (2d Cir.1982). This modern trend might dictate, it could be argued, that a motion to vacate a default judgment should be granted if it is shown that one or more claims is unexhausted. We merely raise and need not decide the validity of this proposition, however, since we conclude that all of petitioner's claims are exhausted. Claims five, six and eight of the petition were raised on direct appeal to the Appellate Division. Leave to appeal to the Court of Appeals was then denied. Claims one through four, and eight were raised on petitioner's coram nobis motion, pursuant to N.Y.Crim.Proc. Law § 440.10, and claim seven, which relates to the validity of the section 440.10 proceeding, was included in petitioner's application for leave to appeal the denial of the coram nobis motion. Leave to appeal was denied, thus exhausting these claims. *See Guyton v. LeFevre,* 560 F.Supp. 1237, 1242 & n. 7 (S.D.N.Y. 1983). Indeed, the only specific failure to exhaust argument made by respondents in their answer (which we now examine for this limited purpose) is that claim three of the petition, when presented in state court, "was argued on the brief in support of the section 440.10 motion on state law grounds," and thus was not "fairly presented" to the state courts. Our examination of the brief in question shows that 1) petition-er explicitly and repeatedly stated that his claim was brought under the federal constitution, *see Klein v. Harris,* 667 F.2d 274, 282 (2d Cir.1981), 2) his quotation of one state case included its citation to two United States Supreme Court cases, and 3) a number of state cases cited by petitioner applied federal constitutional law in similar factual contexts. This was sufficient to alert the state courts to the constitutional nature of petitioner's claim. *See Daye v. Attorney General,* 696 F.2d 186, 191–195 (2d Cir.1982) (en banc). Accordingly, we find the entire petition to be exhausted.[5]

Respondents argue finally[6] that they should now be relieved of the default judgment since "the instant default coupled with the renewed possibility of being held in default has and will act as a resounding deterrent to unexplained delays in habeas proceedings." Resp.Mem. at 14. However, respondents have not persuaded us on this motion to vacate either that we misapplied the law in entering default, *see, e.g., Tarkington v. United States Lines Co.,* 222 F.2d 358 (2d Cir.1955), or that there are *any* facts that might tend to excuse respondents' impermissible handling of this petition. *See, e.g., Standard Newspapers, Inc. v. King,* 375 F.2d 115 (2d Cir.1967); *Ohliger v. United States,* 308 F.2d 667 (2d Cir.1962). To set aside our July 28 decision merely because, some four and a half months after we ordered them to do so, respondents have at last answered the petition, would belie the seriousness with which the decision to enter a judgment by default was made.[7] It is of

---

**5.** We do not now refer to respondents' answer to consider whether some claims may be procedurally barred. When we entered default there was no basis for summarily concluding that any claims were procedurally barred, *see* Rule 4, Rules Governing § 2254 Cases, and procedural bypass is an argument which goes to the merits of a petitioner's lawful incarceration. It is not equivalent to failure to exhaust. *See Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1569–70 n. 28, 71 L.Ed.2d 783 (1982); *Gulliver v. Dalsheim,* 687 F.2d 655, 658 n. 4 (2d Cir.1982). Moreover, it is clear from the record before us that, at a minimum, some otherwise validly stated claims in the petition are also not procedurally barred.

**6.** Respondents' other arguments are adequately addressed in our decision of July 28.

**7.** Although respondents exclusively relied, and we have heretofore based our decision, on the standards for vacating a *judgment by default* set forth under Fed.R.Civ.P. 60(b)(1) and (6), a persuasive argument exists that we should evaluate this motion on the more lenient "good cause" standard of Fed.R.Civ.P. 55(c), applied on a motion to set aside an *entry of default. See Meehan v. Snow,* 652 F.2d 274, 276–77 (2d Cir.1981). Petitioner did not strictly comply with the dictates of Rule 55 by first seeking an entry of default pursuant to 55(a). Somewhat as a result, our decision of July 28 also did not carefully distinguish between entry of default and entry of default judgment, although it was

course encouraging that "a system has been implemented to minimize and prevent the possibility of such occurrences in the future." Resp.Mem. at 14. Such a system would seem the best way for respondents to avoid the type of result they now seek to undo.

The motion to vacate is denied, and, since a stay was only sought until our decision on the motion to vacate was rendered, the motion for a stay is also denied.

SO ORDERED.

the latter which actually was ordered entered. On the other hand, "[t]he court does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus." Advisory Committee Note to Rule 11, Rules Governing § 2254 cases. Here, where 1) the petitioner is *pro se* and incarcerated, 2) respondents have had ample opportunity to explain missed deadlines to the court and thus show "good cause" for their actions, and 3) respondents were unquestionably on notice of their default by the court and by the petitioner's summary judgment motions (of which respondents have acknowledged the existence, *see* Resp.Mem. at 13, and with which respondents have not argued they were not served), we think a persuasive counterargument exists that technical compliance with Fed.R.Civ.P. 55(a) should be waived, and that the good cause standard is not the one which should now be applied.

In any case, we conclude that respondents have not met the more lenient good cause standard for setting aside an entry of default. First, the pattern of missed deadlines followed by warnings from the court and more missed deadlines can only be viewed as willful, cognizant indifference to the statutory rights of the petitioner to have this petition reviewed. *See Traguth v. Zuck,* 710 F.2d 90, 95, n. 3 (2d Cir.1983). Second, since a statutory scheme exists which unequivocally entitles the petitioner to a *prompt* review of his claim, respondents' largely unexplained dilatoriness clearly caused actual prejudice to petitioner's federal rights. These findings, we must conclude, would defeat a claim of good cause had such a claim been made. *See Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981).